**Raymond Paul PRYNE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–93–057 CR.**

Court of Appeals of Texas, Beaumont.

Aug. 24, 1994.

Bruce Neill Smith, Beaumont, for appellant.

John Kimbrough, County Atty., Troy Johnson, Asst. County Atty., Orange, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

On February 8, 1993, appellant was found guilty by a jury to the charge of aggravated sexual assault and punishment was assessed at confinement in the Institutional Division of the Texas Department of Corrections for a term of 65 years. Appellant brings five points of error to the Court.

The complaining witness, L.A.G., was a waitress at a tavern known as the Little Brown Jug located near Lamar University on Martin Luther King Boulevard in Beaumont, Jefferson County, Texas, on March 30, 1992. On March 28, 1992, while appellant, Raymond Pryne, was patronizing the tavern in question, a water cooler and certain tools were stolen from his truck. Appellant

charged L.A.G. that she knew the identity of the thief but was protecting him. L.A.G. denied any knowledge of the theft.

On the night of the offense in question, March 30, 1992, appellant again accused L.A.G. of protecting the thief and a heated argument ensued. Appellant was accompanied by Tommy McCoy although he did not enter into the argument. Even though L.A.G. was on duty that night, there were not many customers so she decided to go home about 10:30 or 11:00 o'clock. She had the bartender call a cab for her so she went outside to check on a customer who had passed out in his truck.

As she was returning to the establishment, the appellant and Tommy McCoy were coming out of the tavern and appellant approached her again about the theft of the cooler and the tools. He then grabbed her by the arm and even though she resisted and cried out, he put his arm around her neck and took her to his truck.

While McCoy drove the vehicle, the appellant threatened L.A.G. and struck her in the face with his fist, then with a tire iron. The blows knocked out several of her teeth and fractured her jaw. By that time, McCoy had driven the vehicle onto Interstate 10 in an easterly direction across the Neches River Bridge and into Orange County. He took the first exit and drove into the Rose City area where they turned onto a dirt road and stopped near an abandoned sand pit that had become a lake.

L.A.G. took the opportunity to escape but appellant captured her at the edge of the lake and took her back to the truck. McCoy pulled her onto the flat-bed portion of the truck and held her down while appellant raped her. The victim continued to make outcries and to scream but each time she would appellant would hit her with his fist in her face.

They subsequently left the scene and she was thrown from the truck. As soon as her feet touched the ground she started running along a barbed wire fence. She tripped and fell, then the appellant and McCoy put the truck into reverse and backed up toward the victim. Tommy McCoy was driving the

truck. The victim was able to elude the appellant and McCoy by running into a steep ditch. McCoy and appellant then left the scene in the direction of Rose City. L.A.G. found her way to Interstate 10 and was able to stop a wrecker driver who called the Sheriff's Department for assistance. A deputy sheriff took L.A.G. to St. Elizabeth Hospital.

 Appellant's first point of error alleges error on the part of the trial court in denying appellant's motion for mistrial based upon non-responsive, prejudicial comments of the State's witness, Charlotte K. Parry, who testified that after the victim told her she only wanted to go home that she told the victim "she needs to consider these people or whoever, cause they could do this to someone else."

Defense counsel objected that the answer was non-responsive. The court sustained the objection and instructed the jury to disregard the comment. The court denied the request for a mistrial. Assuming that the answer by Ms. Parry was unresponsive, we cannot say that the evidence was clearly calculated to inflame the minds of the jury and was of such a nature to prevent withdrawing the impression produced on the jury's minds by a proper instruction by the court. *Barney v. State,* 698 S.W.2d 114 (Tex. Crim.App.1985).

The comment by Ms. Parry was not so prejudicial that would inflame the minds of the jury against the defendant by suggesting that he was guilty of a collateral crime or was generally a criminal. *Nobles v. State,* 843 S.W.2d 503 (Tex.Crim.App.1992). Even an inadvertent reference to prior incarceration can be cured of its prejudicial effect. *Nobles,* 843 S.W.2d at 506. We find that the prompt instruction by the trial court to disregard Ms. Parry's comment was sufficient to cure any error.

Appellant's second point alleges error on the part of the trial court in permitting the State to prejudicially bolster its own witnesses. Appellant complains that the State was allowed to improperly bolster the testimony of the complaining witness, L.A.G., through testimony submitted by Detective Bill Davis

and through the testimony of Charlotte K. Parry.

■ Bolstering occurs when additional evidence is used to add truthfulness or greater weight to earlier, unimpeached evidence offered by that same party. *Rousseau v. State*, 855 S.W.2d 666 (Tex.Crim.App.), *cert. denied*, ——— U.S. ———, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993).

■ L.A.G. testified during direct examination that she identified appellant in a photographic line up after the commission of the offense. Earlier that same day she had given a written statement to the authorities. After she had given the written statement, Detective Bill Davis read it to her instead of allowing her to visually proofread the statement because her left eye was swollen shut.

During cross-examination defense counsel asked the complaining witness how she could make a photographic identification of the appellant if it was necessary for the statement to be read to her. He also asked if any suggestion (to identify appellant) had been made by one of the police officers and whether she was able to see well enough for the photographic line up. Later, the trial court permitted Detective Bill Davis to explain that even though L.A.G.'s left eye was closed shut she could still see out of her right eye well enough to make the photographic line up. We find that appellant challenged her ability to make an identification in the photographic line up and was an attempt to impeach her identification. *Smith v. State*, 595 S.W.2d 120 (Tex.Crim.App.1980). We find that the complainant's identification of the appellant was challenged sufficiently enough to render Detective Davis' testimony admissible.

■ Appellant contends that all of the testimony of Charlotte K. Parry, Administrative Assistant of the Rape and Suicide Crisis Center, was designed to bolster the testimony of the complainant. Prior to Ms. Parry having testified, trial counsel for appellant had cross-examined the complainant L.A.G. extensively attacking her character for truthfulness, eliciting several prior inconsistent statements of the complainant, confronting her at length about the "sexy outfits" that she wore as a cocktail waitress, accusing her of dancing with customers in a "sexy manner", and asking questions that suggested L.A.G. did know the identity of the guilty party who had stolen appellant's cooler and tools. L.A.G. was questioned at length about comparisons between her written statement and her trial testimony and generally was cross-examined in great detail about each and every fact of the offense. If a witness has been impeached as to material matters by evidence of prior inconsistent statements, then evidence of the witness' prior consistent statements are admissible to counter such impeachment. *Wilhoit v. State*, 638 S.W.2d 489 (Tex.Crim.App.1982). We find the extensive cross-examination attacking the truthfulness of the complainant renders Ms. Parry's statements admissible as against an objection that her testimony was bolstering the testimony of the complainant.

■ Appellant's point of error three alleges error on the part of the trial court in denying the admission of testimony regarding the reputation of the complainant for truthfulness. Appellant's trial counsel questioned Robert Bean who was the prior employer of the complainant and asked "Do you know [L.]'s reputation for truthfulness?" to which the prosecutor objected, which objection was sustained. Trial counsel then asked "Do you have an opinion as to [L.]'s reputation for truthfulness? Whether it's good or bad?" The prosecutor again objected and that objection was sustained. Trial counsel for appellant stated that he was relying on Tex.R.Crim.Evid. 405 but did not, at any time, proffer to the court by way of bill of exceptions or otherwise what Mr. Bean's testimony would have been either through questions and answers or in a narrative statement. Absent a showing of what the excluded testimony would have been, nothing is presented for our review. *Brown v. State*, 438 S.W.2d 926 (Tex.Crim.App.1969); *Sullivan v. State*, 678 S.W.2d 162 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986); Tex.R.App.P. 52(b).

■ Appellant in his point of error number four charges the trial court with error in overruling appellant's objection to the jury

charge in two respects. In the first instance, appellant alleges that the court instructed the jury that it could find non-consent on the part of the complainant if the jury believed that physical force or violence was used, even though the State did not plead the use of force or violence, to compel the complainant to submit to the offense inflicted. Appellant alleges that the indictment only contains language of threatening to use force and violence to compel the complainant to submit. The State elected to proceed on Paragraph A of the indictment which reads in pertinent part as follows:

> [D]id then and there intentionally and knowingly, by threatening to use force and violence against [L.A.G.], and of which said threats [L.A.G.] believed Raymond Paul Pryne had the ability to execute, cause the penetration of the female sexual organ of [L.A.G.], by the use of the sexual organ of Raymond Paul Pryne, without the consent of [L.A.G.], and Raymond Paul Pryne did then and there by acts and words place [L.A.G.] in fear that serious bodily injury would be imminently inflicted on [L.A.G.].

Paragraph VII of the trial court's charge on guilt/innocence (hereinafter referred to as the "application paragraph") states as follows:

> Now bearing in mind the foregoing instructions, if your {sic} believe from the evidence beyond a reasonable doubt, that the defendant, RAYMOND PAUL PRYNE, on or about the 30th day of March, 1992, in the County of Orange, and the State of Texas, as alleged in the indictment did then and there intentionally and knowingly, by threatening to use force and violence against [L.A.G.], and of which said threats [L.A.G.] believed RAYMOND PAUL PRYNE had the ability to execute, cause the penetration of the female sexual organ of [L.A.G.], by use of the sexual organ of RAYMOND PAUL PRYNE, without the consent of [L.A.G.], and RAYMOND PAUL PRYNE did then and there by acts and words place [L.A.G.] in fear that serious bodily injury would be imminently inflicted on [L.A.G.], you will find the defendant guilty of the offense of Aggravated Sexual Assault and say so by your verdict.

In comparing the application paragraph language with the indictment language we can see that it coincides completely. Appellant complains that the definition of "consent" in the charge authorized the jury to convict appellant of an offense on a theory completely different from that alleged in the indictment. The court charged the jury on consent as follows:

> A sexual assault is without the 'consent' of the other person if:
>
> (1) the actor compels the other person to submit or participate by the use of physical force or violence; or
>
> (2) the actor compels the other person to submit or to participate by threatening to use force or violence against the other person and the other person believes that the actor has the present ability to execute the threat.

Appellant argues that the jury could find non-consent on the part of L.A.G. if they believed physical force or violence was used even though the State had plead threats to use force and violence.

Appellant in the trial court below objected to Paragraph I defining sexual assault being without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence.

Appellant objected on grounds that "it implies to the jury that the—if the jury finds—so finds as worded in Paragraph One then they can find the defendant of aggravated sexual assault. That is an element of the sexual assault and aggravated sexual assault statute that has not been plead by the State." We find that in comparing the objections lodged before the trial court and the point of error brought before the Court not to be in harmony, and the trial court was not apprised of the specific objection being lodged on appeal by appellant. We further find that appellant must have shown fundamental error in view of this disharmony.

■ To determine if the charge is fundamentally defective, the application paragraph must be examined in light of the indictment.

*Willis v. State,* 669 S.W.2d 728 (Tex.Crim. App.1984). We have noted that the application paragraph tracks the indictment, therefore, we do not perceive fundamental error to have been committed by the trial court. Even though the charge regarding definitions of terms should be limited to the portion of the applicable statute to the allegations in the indictment and to so restrict definitions, it is not reversible error to include the entire definition. *Lewis v. State,* 676 S.W.2d 136 (Tex.Crim.App.1984); *Boston v. State,* 642 S.W.2d 799 (Tex.Crim.App. 1982).

We further find that fundamental error and egregious harm has not been demonstrated. *Almanza v. State,* 724 S.W.2d 805 (Tex.Crim.App.1986). We overrule the first portion of appellant's fourth point of error.

■ The second portion of appellant's fourth point of error in alleging the trial court erred in overruling timely objections to the jury charge by appellant concerning the court's charge which included the State's requested special issue on the use or exhibition of a deadly weapon. The indictment filed against the appellant on May 27, 1992 alleged in the third count that appellant "in the course of the same criminal episode ... used and exhibited a deadly weapon, to wit: a tire iron ..." On February 1, 1993, prior to the commencement of voir dire examination of the jury panel, the State abandoned the third count of the indictment.

Appellant complains that no other form of notice was given that the State would pursue an affirmative finding of a deadly weapon if it elected to proceed only on the first count of the indictment in question. Appellant argues that since he did not receive proper notice, that the State would pursue an affirmative finding of the use of a deadly weapon that appellant's objection to the charge including the State's requested issue on use of a deadly weapon should have been sustained.

The point of error before us is similar to the argument made by the appellant in *Grettenberg v. State,* 790 S.W.2d 613 (Tex.Crim. App.1990). In that case the State abandoned the count which alleged use of a deadly weapon prior to trial. The State then sought and received an affirmative finding of the use of a deadly weapon to which the appellant complained of having had no notice that such finding would be pursued by the State. The court held that "[w]hen the theories of prosecution contained in the counts are so interrelated ... the election by the State to pursue one of the counts in preference to the other will not vitiate the notice given in the indictment in its original form." *Grettenberg,* 790 S.W.2d at 614–615.

Applying this rational to the case before us, we find that the indictment in its original form provided the required notice to the appellant that the State could pursue a finding of use of a deadly weapon and that abandonment of that third count in the indictment did not cancel the notice which appellant had received. We therefore overrule the second portion of appellant's point of error number four.

■ Appellant's complains in his point of error number five that the trial court should have sustained appellant's objection to improper jury argument by the State.

During the punishment phase of the trial, appellant testified that he wanted the jury to assess probation so that he might have an opportunity to enroll in college courses at Oral Roberts University in Tulsa, Oklahoma. The following argument was made by the State's attorney in the presence of the jury:

> He has the audacity to come up here and tell you while he is sitting in jail he decides he wants to be in business administration. He has got the audacity to try to make you give him probation so he can go gallivanting up to Tulsa, Oklahoma at a Christian University, Oral Roberts University and go to school. He thinks that's punishment for some reason. Do you think it's punishment to give him probation so he can go up to some school with a bunch of teenage girls running around.

> MR. SMITH: I object, That's outside the record. That's improper argument.

> THE COURT: Ladies and gentlemen, the argument of the attorneys is not evidence and you may not consider it as such. Objection is overruled. You may continue.

Assuming the argument to have been improper we must determine if it constitutes harmless error, and the proper standard of review is whether in light of the record as a whole, there is a reasonable probability that the argument of which the appellant complains might have contributed to appellant's punishment, or in the case before us, the jury's rejection of probation. *Orona v. State,* 791 S.W.2d 125 (Tex.Crim.App.1990); TEX. R.APP.P. 81(b)(2). We must calculate as much as reasonably possible the probable impact of error, *assuming the argument to have been erroneous* in light of the existence of other evidence or other positions, defenses and argument of the accused. *Orona,* 791 S.W.2d at 130.

In making an error analysis of improper jury argument, we are not to simply examine the case for overwhelming evidence to support the jury's findings; rather, we must examine the source of error, the nature of the error, and to what extent it was emphasized by the State with a view toward judging its probable, collateral implications. *Id.* After employing the analysis as outlined above, we cannot say that the jurors were prejudiced in their decision making when assessing punishment. Indeed, we say they were *not.* We so conclude beyond a reasonable doubt. In light of all the surrounding circumstances, the fact that the issue was established by the appellant, it was appellant's strongest grounds for probation, it was only addressed one time by the State, we find that appellant's point of error number five should be overruled.

Additionally, as a separate basis for overruling point of error five, we find the argument was not improper. There was no error.

We find that all of appellant's points of error should be overruled and we therefore affirm the conviction of the appellant.

AFFIRMED.