6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00030-CV


______________________________





IN RE:


DOROTHY SMITH








 
 

Original Mandamus Proceeding







 
 



Before Morriss, C.J., Ross and Carter, JJ.

Opinion by Justice Ross



O P I N I O N


 Dorothy Smith, relator, has filed a petition seeking issuance of a writ of mandamus. 
She asks this Court to direct the trial judge to vacate its order granting a legislative
continuance because of the existence of an alleged Rule 11 agreement between the
parties, because the continuance infringes on her due process rights, or because the
statute authorizing legislative continuances is unconstitutional. See Tex. Civ. Prac. & Rem.
Code Ann. § 30.003(c) (Vernon 1997). Smith also argues in the alternative we should
vacate and return the case to the trial court to reconsider the continuance as a
discretionary matter. This argument is based on Smith's contention that, because the
defendant hired the legislator as an attorney within ten days of the date on which the trial
court set a date on which trial would commence, the trial court had discretion to overrule
the continuance. See Tex. Civ. Prac. & Rem. Code Ann. § 30.003(c).

 We have reviewed the record provided, as well as the arguments and authorities
presented by counsel. We conclude relator has not shown this Court she is entitled to the
relief sought. See Tex. R. App. P. 52.8(a). 

 Smith has also requested that this Court issue an emergency stay to stay the effect
of the grant of the legislative continuance pending our determination of her petition for writ
of mandamus. The motion is overruled. 


 The petition is denied.


 Donald R. Ross

 Justice


Date Submitted: February 5, 2003

Date Decided: February 6, 2003



9" QFormat="true" Name="heading 8"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00197-CR

                                                ______________________________

 

 

                                        RICKY JOEL
SEAT, Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the Sixth
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 23747

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Ricky Joel
Seat was convicted of the unauthorized use of a motor vehicle and sentenced by
jury to ten years imprisonment in the Texas Department of Criminal JusticeInstitutional
Division.[1]  On appeal, Seat claims that he received
ineffective assistance of counsel in violation of the United States and Texas Constitutions,
that the evidence was insufficient to support conviction, and that he was
denied the right to counsel during the thirty-day time period in which to file
a motion for new trial.  We affirm the
judgment of the trial court.

I.          Facts 

 

            When Steven
Adams arrived at work at Pat Swaims Auto Sales on the morning of
April 16, 2010, he noticed a year model 2000 red Chevrolet S-10 pickup
truck was missing from the lot.[2]  Adams contacted the police, and a report was
made.  Shortly thereafter, Adams learned
that Gene Gray saw the missing truck earlier that same morning at the home of
Seats girlfriend.  Adams then began a
search for the missing truck on his own and located the truck in a wooded area
near a walking track.  Upon finding the
missing truck, Adams contacted the Paris Police Department.  Two officers arrived at the location a short
time later, along with Seat, who had been apprehended.  Officer David Whitaker located a set of keys
in Seats pocket, one of which operated the trucks door lock and
ignition.   

II.        Ineffective Assistance of Counsel

 

            The Sixth Amendment to the
United States Constitution grants an accused the right to have the assistance
of counsel for his or her defense, a right that has been interpreted to require
the effective assistance of counsel.  Strickland
v. Washington, 466 U.S.
668, 686 (1984).  The Sixth Amendment's
guarantee of assistance of counsel is binding on the states by operation of the
Fourteenth Amendment.  McCoy v. Court
of Appeals, 486 U.S. 429,
435 (1988).   A conviction resulting from
ineffective assistance of counsel is constitutionally infirm.  Strickland,
466 U.S. at 688.

            Seat claims
that his trial counsel rendered ineffective assistance under the state and
federal Constitutions.  Ineffective
assistance of counsel claims are evaluated under the two-part test formulated
by the United States Supreme Court in Strickland,
requiring a showing of both deficient performance and prejudice.  Strickland,
466 U.S. at 689; Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999); Fox
v. State, 175 S.W.3d 475, 485 (Tex. App.Texarkana 2005, pet. refd).  Ineffective assistance of counsel claims are
not built on retrospective speculation, but must be firmly rooted in the
record, with the record itself affirmatively demonstrating the alleged
ineffectiveness.  Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).  

            To prevail
on this claim, Seat must prove by a preponderance of the evidence that (1) his
counsels representation fell below an objective standard of reasonableness,
and (2) the deficient performance prejudiced the defense.  Strickland,
466 U.S. at 688; Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). 
We indulge a strong presumption that counsels conduct falls within the
wide range of reasonable, professional assistance and was motivated by sound
trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).  If counsels reasons for his
conduct do not appear in the record and there is at least the possibility that
the conduct could have been legitimate trial strategy, we will defer to
counsels decisions and deny relief on an ineffective assistance claim on
direct appeal.  Ortiz v. State, 93 S.W.3d 79, 8889 (Tex. Crim. App. 2002).  Under this standard, a defendant must prove
that counsels representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a
just result.  Strickland, 466 U.S. at 686.

            Seat argues
his trial counsel was ineffective because he:  (1) failed to object to several comments by
the States attorney; (2) failed to object to improper testimony from the
States witnesses; (3) failed to object to irrelevant questions, misstatements
of the law, and improper jury argument. 
Because the record is silent regarding counsels reasons for failing to
make the foregoing objections, we will assume it was due to any strategic
motivation that can be imagined.[3]  Mata v.
State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).  

            A.        Failure to Object to States Comments

 

            Seat initially complains that trial
counsel did not object to comments made during the guilt/innocence phase that
dealt with punishment.[4]  The prosecutors remarks do not imply that
the jury should ignore its duty to decide guilt or innocence.  Rather, these remarks appear to be directed
to the States assessment of the strength of the case.  See Mann
v. State, 718 S.W.2d 741, 74445 (Tex. Crim. App. 1986), overruled on other grounds by Mayes v. State, 816 S.W.2d 79 (Tex.
Crim. App. 1991) (prosecutors remarks asking jury to find defendant guilty so
we can get on with what this trial is all about directed to obvious strength
of prosecutors case).  Even assuming the
prosecutors remarks were objectionable, counsel could have reasoned that an
objection might draw attention to the comments, thus giving the appearance that
Seat was guilty.   Instead, both in the
defense opening statement and closing argument, counsel maintained the case was
about the States duty to prove each element of the alleged crime beyond a
reasonable doubt, or the jury must acquit. 
We cannot say that defense counsel's strategy was so ill-advised as to
fall outside the broad range of reasonable professional assistance. 

 

            Next, Seat
complains trial counsel failed to object to the prosecutors comment during
voir dire implying there were things about the case the jury could not know
during the guilt/innocence phase of the trial.[5]  Given the context in which this comment was
made, it was not objectionable,  but
merely an attempt to avoid improperly answering questions from members of the
jury panel.    We do not find this to be
deficient performance.

            Seat
further complains of counsels failure to object to the States implication
during voir dire that Seat was a convicted felon.[6]  Both the State and the accused have the right
to inform the jury of the range of punishment applicable to an offense,
including a range that is enhanced, and to qualify the panel on the full range
of punishment.  Frausto v. State, 642 S.W.2d 506, 509 (Tex. Crim. App. [Panel Op.] 1982)
(prosecutor may inform jury panel of range of punishment applicable if State
were to prove prior conviction for enhancement purposes, but may not inform
jury of specific allegations in enhancement paragraph); Hart v. State, 173 S.W.3d 131, 142 (Tex. App.Texarkana 2005, no
pet.).  The statements here by States
counsel do not attempt to inform the jury of the specific allegations in the
enhancement paragraph; trial counsels failure to object under these
circumstances does not amount to deficient performance.

            B.        Failure
to ObjectPolice Officer Testimony 

 

            Seat also
complains of counsels failure to object to Whitakers testimony that, after
receiving certain information, he went to Seats house, stating, I know he
lives on -- Cedar Street because Ive been over there before.  Seat contends this statement implies he
committed previous crimes, evidence of which is inherently prejudicial.  See
Jackson v. State, 320 S.W.3d 873, 889
(Tex. App.Texarkana 2010, pet. refd). 
Whitakers comment was unsolicited and did not mention prior criminal
conduct.  This statement does not
necessarily imply previous criminal conduct by Seat.[7]  Police officers are called to various
locations for many reasons; Seat or someone at his home may have required the
assistance of police.  Any objection
based on the premise that Whitakers comment referenced prior criminal conduct
may have served only to validate such an inference.  Counsels decision not to object was not
deficient performance.

            Next,
Seat contends counsel was ineffective because he failed to object to hearsay
testimony from Whitaker concerning information received from an unidentified
witness.[8]  Trial counsel may have chosen not to object
based on the premise that the testimony was not hearsay.  Extrajudicial statements offered for the
purpose of showing what was said rather than for the truth of the matter stated
therein does not constitute hearsay.  Dinkins v. State, 894 S.W.2d 330, 347
(Tex. Crim. App. 1995).  Counsel could
have believed this testimony not objectionable because it was offered not to
prove the truth of the matters asserted, but to illustrate the steps in
Whitakers investigation.  See Crivello v. State, 4 S.W.3d 792, 80001
(Tex. App.Texarkana 1999, no pet.) (permissible for officer to testify that he
was acting in response to information received). 

            When
Whitaker returned to speak with the unidentified witnesses, he located Seat
hiding under the truck (not the missing truck) the witnesses were standing
around.  Counsel presumably was aware of
the circumstances of his clients apprehension, and the statement that Seat ran
could reasonably be understood as an explanation of the steps taken to locate
Seat.  As such, the statement may not
have been hearsay.  Said another way, the
conclusion that Whitakers testimony was offered to prove the truth of
statements made outside the courtroom was not inescapable.  See
Thornton v. State, 994 S.W.2d 845, 854 (Tex. App.Fort Worth 1999, pet.
refd).  In any event, A lawyer may well
choose not to object to hearsay or other inadmissible evidence if it
potentially enhances his client's defense or at least does not seriously
prejudice it.  Thompson, 9 S.W.3d
at 813.   On this record, we cannot say
that defense counsel's strategy was so ill-advised as to fall outside the broad
range of reasonable professional assistance. 

            Seat
further contends his trial attorney provided ineffective assistance because he
did not object to Whitakers testimony regarding Seats guilt.[9]  Seat maintains that because Whitaker improperly
stated his opinion that Seat was in possession of the vehicle, an issue
ultimately to be decided by the jury, trial counsel should have objected.  Whitaker did not testify that Seat was
guilty; he merely testified that he believed Seat was in possession of the
missing vehicle.  Nevertheless, under
Texas Rule of Evidence 704, a lay witness may offer an opinion on an ultimate
issue.  Ex parte Nailor, 149 S.W.3d 125, 13435 (Tex. Crim. App.
2004).  Seat offers no argument as to
whether this testimony would have properly been admitted under Rule 704 or
under Rule 701 of the Texas Rules of Evidence (permitting a lay witness to
offer opinion testimony that is rationally based on perception of witness and
helpful to clear understanding of witness testimony or determination of fact
in issue).  Tex. R. Evid. 701. 
Accordingly, Seat has failed to carry his burden to show that counsels
performance was deficient for failing to object to this testimony.  

            Next,
Seat complains of counsels failure to object to Whitakers testimony that Seat
was hiding from Whitaker and that Seat attempted to hide the missing vehicle.[10]  Seat complains that counsel allowed the
witness to interpret his actions, which emphasizes his guilt by hiding and
attempting to hide the truck.  Generally,
opinion testimony is not admissible to interpret the meanings of acts, conduct,
or language of another.  Rodriguez v. State, 903 S.W.2d 405, 408
(Tex. App.Texarkana 1995, pet. refd). 
However, a lay witness may offer an opinion based on his or her perception
to help a fact-finder understand testimony or determine a fact in issue.  See
Tex. R. Evid. 701; Solomon v. State, 49 S.W.3d 356, 364
(Tex. Crim. App. 2001).   Seat offers no
argument as to whether this evidence would have been properly admitted under
Rule 701.  Accordingly, he has not met
his burden to show that counsels performance was deficient under the first
prong of Strickland.

            Further
complaint is made regarding counsels failure to object to bolstering, leading,
and/or argumentative testimony.[11]  Seat complains the first and last of
Whitakers statements are bolstering the previous testimony of other,
unimpeached witnesses.  Bolstering
occurs when additional evidence is used to add truthfulness or greater weight
to earlier, unimpeached evidence offered by the same party.  Pryne
v. State, 881 S.W.2d 593 (Tex. App.Beaumont 1994, pet. refd).  However, not all corroborative evidence is
improper bolstering.  For example, a
relevant fact may be proven by multiple witnesses who have personal knowledge
of the fact, subject to the courts discretion to exclude cumulative evidence,
and as long as the testimony does not specifically relate to another witness
credibility.  See Baskin v. State, 672 S.W.2d 312 (Tex. App.San Antonio 1984, no
pet.).  

            Here,
Whitaker testified there were two walking tracks in the area.  This statement was based on Whitakers
personal knowledge, as he previously testified in detail about the two
different walking tracks and their respective locations.  The problem Seat complains of is that part of
the testimony indicating the existence of two walking tracks confirmed what
Ms. Bishop told Whitaker.  Earlier,
Bishop testified that Seat wanted her to take him to drop the truck off at the
walking track.  She further testified
that there were a few walking tracks in the area.  Whitakers testimony regarding the fact that
there were two walking tracks, in light of his detailed descriptions of their
respective locations, appears to have been merely clarifying, rather than
bolstering, Bishops testimony.  In any
event, this testimony could have been fairly viewed in that light by trial
counsel.  It was not deficient performance
to choose not to object to this question. 

            Seat claims
Whitakers statement that something was removed from the rear bumper of the
truck (apparently a sticker) and this matches up the description of what Gray
told him, is bolstering to which counsel should have objected.[12]  Bolstering is more precisely defined as the
introduction of  irrelevant evidence,
which does not make the existence of [a] fact that is of consequence to the
determination of the action more or less probable, for the sole purpose of
adding credence to some earlier unimpeached evidence offered by the same
party.  Cohn v. State, 849 S.W.2d 817, 81920 (Tex. Crim. App. 1993).  Cohn makes
clear that Rule 401 of the Texas Rules of Evidence[13]
is the source of the prohibition on bolstering. 
Consequently, evidence introduced solely for the purpose of bolstering
does not meet Rule 401s definition of relevant evidence.  Id.
at 819.  

            Testimony
that Seat removed a bumper sticker on the missing truck is relevant because it
has a tendency to make more probable the notion that Seat did not want the
truck to be recognized because he may have taken it.  Whitakers testimony that Exhibit 12[14]
indicates Seat removed a sticker from the rear bumper was not introduced solely
for the purpose of bolstering Grays testimony. 
This exhibit depicts the condition of the truck when it was located by
Whitaker, indicating it was the same truck from which the sticker had been
removed.  Because this testimony
corroborates another witness story or enhances inferences to be drawn from
another source of evidence, it is relevant evidence in the sense that it has
an incrementally further tendency to establish a fact of consequence, and
should not be considered bolstering.  Cohn, 849 S.W.2d at 820.  We find no deficient performance in the
failure to object.

            Seat claims
the remaining testimony (referenced in footnote ten) was leading and counsel
should have objected.  Counsel made
numerous objections to the States leading questions throughout Whitakers
direct examination.   At some point, it
becomes a judgment call on whether to continue to object and thereby risk the
appearance, in front of the jury, of being obstructionist.  We will not second-guess counsels judgment
on this issue.

            C.        Failure
to ObjectPunishment Evidence 

 

            Next, Seat
complains that counsel did not object to irrelevant questions during the
punishment phase of the trial.[15]
 What is relevant and admissible during
the punishment phase is simply that which will assist the fact-finder in
deciding the appropriate sentence in a particular case.  Sims v.
State, 273 S.W.3d 291 (Tex. Crim. App. 2008).  We agree that the complained-of evidence was
not relevant and therefore subject to objection.  In light of Seats prior criminal history,
however, we cannot conclude that this isolated testimony that his father had
been in trouble was sufficient to undermine confidence in the resultthat the
outcome at the punishment stage would have been different but for counsels
failure to object to this line of questioning.

            D.        Failure
to ObjectMisstatement of Law

 

            Further
complaint is made of counsels failure to object to the prosecutors
misstatement of the law.  In his opening
statement, the prosecutor made the following statement:

Mr. Hearrell talked to you a little bit about
what unauthorized use of a motor vehicle is on grand jury [sic].  A little bit confusing but what that
essentially is, is car theft.  But for it
to be car theft, you have to catch the person stealing the car.  Okay. 
The legislature made a statute that if youre driving a car essentially
thats stolen without that owners permission that thats a State Jail Felony
offense.

 

Section 31.07 of the Texas Penal Code states that a person
commits the offense of unauthorized use of a vehicle if he or she intentionally
or knowingly operates anothers . . . vehicle without the effective consent of
the owner.  Tex. Penal Code Ann. § 31.07. 
Section 31.03 states that a person commits the offense of theft if he or
she unlawfully appropriates property with intent to deprive the owner of
property.  Property is unlawfully
appropriated if it is without the owners effective consent.  Tex.
Penal Code Ann. § 31.03(a), (b)(1) (Vernon 2011).  While both offenses contain the element of
lack of the owners effective consent, theft further requires the intent to
deprive the owner of the owners property. 
The intent to deprive the owner of property is a necessary element for
a car theft charge.  Flores v. State, 888 S.W.2d 187, 190 (Tex. App.Houston [1st Dist.]
1994, pet. refd).  

            Because the
charge of unauthorized use of a motor vehicle does not include the element of
the intent to deprive the owner of property, it was a misstatement of the law
to suggest that the offense of unauthorized use of a motor vehicle is
essentially car theft.  Further, the
offense of theft (or as suggested here, car theft) does not require that the
person must be caught stealing the car, as the State suggested to the jury.[16]  This appears to be an attempt to explain the
differences in the requirements of the two offenses, rather than an argument
that Seat was guilty of car theft (which would place a more onerous burden on
the State in proving its case). 
Regardless of the prosecutors intent, the statement could be understood
to imply that Seat committed car theft, a more serious crime than the
unauthorized use of a motor vehicle.  The
Texas Court of Criminal Appeals has held that defense counsel has a duty to
correct misstatements of the law that are detrimental to his or her client.  Andrews
v. State, 159 S.W.3d 98 (Tex. Crim. App. 2005). 

            Even if the
failure to object to the prosecutors statement was deficient performance, Seat
has not established that there is a reasonable probability that the outcome of
the guilt/innocence phase of the trial would have been different if not for
this deficient performance.  See Strickland, 466 U.S. at 694.   Failure to make the required showing of
either deficient performance or sufficient prejudice defeats the
ineffectiveness claim.[17]  Id. at
700.

            E.        Failure
to ObjectJury Argument

 

            Seat next argues that
he received ineffective assistance because his attorney did not object to the States
improper jury argument on punishment.[18]  Proper jury argument must encompass one of
the following areas:  (1) summation of
the evidence presented at trial; (2) reasonable deduction drawn from the
evidence; (3) answer to the opposing counsel's argument; (4) a plea for law
enforcement.   Rocha v. State, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000); Lagrone v. State, 942 S.W.2d 602, 619
(Tex. Crim. App. 1997).  Defense counsel
is allowed wide latitude in drawing inferences from the evidence so long as
the inferences are reasonable and offered in good faith.  Cantu v.
State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997); Bryant v. State, 282 S.W.3d 156, 172 (Tex. App.Texarkana 2009,
pet. refd).  There was evidence that
Seat parked the truck in a wooded area off of a walking track where it could
not easily be seen.  We cannot conclude
that the prosecutors inference that Seat later intended to sell the truck for
parts was an unreasonable deduction from the evidence.  

            We find no
deficient performance on this claim.

 

III.       Sufficiency of the Evidence

 

            In his next two points
of error, Seat contends the evidence was insufficient to support the verdict.[19]
 In evaluating legal sufficiency, we
review all the evidence in the light most favorable to the jurys verdict to
determine whether any rational jury could have found the essential elements of
the unauthorized use of a motor vehicle.  See Brooks, 323 S.W.3d at 912 (citing Jackson, 443 U.S. at 319); Hartsfield v. State, 305 S.W.3d 859, 863
(Tex. App.Texarkana 2010, pet. refd) (citing Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  Our rigorous legal sufficiency review focuses
on the quality of the evidence presented. 
Brooks, 323 S.W.3d at 917
(Cochran, J.,  concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 31819)).  

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by the hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Under a hypothetically correct jury charge,
Seat committed the offense of the unauthorized use of a motor vehicle if (1)
Seat (2) intentionally or knowingly (3) operated the motor vehicle (4) without
the effective consent of the owner.  Tex. Penal Code Ann. § 31.07.

            The State
offered the testimony of Gene Gray and Amy Bishop to prove Seat operated the
truck in question.  Seat claims this
testimony is insufficient to prove the truck Gray and Bishop saw him driving
was the same truck taken from the car
lot.   

            Gray
testified that he repossesses cars for a living and has worked for Pat Swaims
Auto Sales.  In speaking with Adams, Gray
learned that a red Chevrolet S-10 pickup was missing from the lot.  Gray testified that he saw Seat driving this
truck on the morning it was discovered missing. 
Seat pulled the truck in front of a house on Fourteenth Northwest
Street, not far from Grays house.  Gray
testified that Seat got out of the truck and acted like he was scratching a
sticker from the back bumper.  Because
Gray knows Seat, he easily recognized him. 
Gray identified the truck Seat was driving in the photographs offered as
exhibits at trial of the truck missing from the car lot.  

            Bishop
resides on Fourteenth Northwest Street. 
On April 16, 2010, Seat (whom Bishop has known for six years) arrived at
Bishops house driving a red Chevrolet S-10 pickup, which Bishop identified in
a photograph offered as an exhibit at trial. 
Bishop testified that the drivers side of the truck Seat operated was
scratched; the scratch on States Exhibit eleven matched the scratch on the
truck Seat was driving.  Seat asked
Bishop to take him to drop the truck off at the walking track, but Bishop
declined.  Seat then drove away in the
red pickup.  

             Bishop further testified that Seat owned a red
Chevrolet S-10 pickup a couple of months prior to this incident, but could
not say if Seat owned such a truck on April 16. 
Bishop could not distinguish the truck Seat owned from the truck shown
in the photographs at trial, and she could not say whether Seat was operating
the truck he owned or some other truck on April 16.  

            Seat
claims that at most, the State proved Seat was driving a red pickup, but the
evidence is insufficient to find that Seat was operating the Chevrolet S-10
taken from the car lot.[20]  This assertion ignores other testimony
identifying the missing truck as the same truck operated by Seat on April
16.  Gray testified that Seat scratched a
bumper sticker from the rear bumper of the truck; the truck recovered from the
wooded area near the walking track had scratch marks on the rear bumper, where
it appeared a bumper sticker was removed. 
Bishop testified the truck Seat operated had a scratch mark on the
drivers side; the truck recovered from the wooded area had a scratch mark on
the drivers side.  In addition, the
truck recovered by Whitaker had the same license plate and VIN number as the truck
purchased by Pat Swaim Auto Sales. 
Whitaker testified that Seat had a Chevrolet key on a set of house keys
in his pocket; this key operated the door lock and ignition of the truck
recovered from the wooded area near the walking track.  

             The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); see also Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979).  The jury may reasonably infer facts from the
evidence presented, and is free to believe or disbelieve all or part of a
witness testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Jones v. State, 984 S.W.2d 254, 257
(Tex. Crim. App. 1998).

             Here, when viewing the evidence in the light
most favorable to the verdict, there is sufficient evidence from which a
rational jury could find that the State proved beyond a reasonable doubt the
elements of unauthorized use of a motor vehicle.  We overrule Seats third and fourth points of
error. 

IV.       Venue

 

            In points of error five and six,
Seat claims the evidence is insufficient to prove the offense occurred in Lamar
County, Texas.   An indictment is
required to allege the location of the offense to establish proper venue.  See
Tex. Code Crim. Proc. Ann. art.
21.02(5) (Vernon 2009).  The indictment
alleges that the offense occurred in Lamar County.  It is presumed venue is proven in the trial
court unless the record affirmatively shows otherwise or venue is made an issue
at trial.  Tex. R. App. P. 44.2(c)(1). 
A plea of not guilty does not automatically put venue at issue.  See
Holdridge v. State, 707 S.W.2d 18, 2021 (Tex. Crim. App. 1986).[21]  Because venue is not a criminative fact,
and therefore not an element of the offense, it need only be proven by a preponderance
of the evidence.  See Tex. Code Crim. Proc.
Ann. art. 13.17 (Vernon 2005); Urbanski v. State, 993 S.W.2d 789, 796
(Tex. App.Dallas 1999, no pet.).  

            Here, Seat did
not challenge venue in the trial court. 
Therefore, the issue is presumed proven at trial unless the record
affirmatively shows otherwise.  Tex. R. App. P. 44.2(c)(1).  The record reflects that the red pickup Seat
drove to Fourteenth Northwest Street was in Lamar County, Texas.  Because this evidence fails to affirmatively
establish that venue does not exist
in Lamar County for the offense of the unauthorized use of a motor vehicle, we
overrule this point of error.

V.        The
Right to Counsel

 

            In
his final point of error, Seat claims he was denied right to counsel in
violation of the Sixth Amendment.  In
support of this contention, Seat claims he was not appointed appellate counsel
until the thirty-day period for filing a motion for new trial expired.[22]  Seat was sentenced on September 13, 2010, and
the notice of appeal, filed on the same date, was signed by trial counsel.  No motion for new trial was filed.  Seat takes the position he was no longer
represented by trial counsel during the time period for filing a motion for new
trial.[23]  He further claims that had appellate counsel
been appointed in a timely manner, counsel would have had the opportunity to
file a motion for new trial to further develop Seats claims of ineffective
assistance.  Seat asks that his
conviction be reversed or, alternatively, that this appeal be abated to allow
him to file a motion for new trial.

            A
motion for new trial must be filed no later than thirty days after the trial
court imposes or suspends sentence in open court.  Tex.
R. App. P. 21.4(a); see Tex. R. Civ. P. 329b.  Although a motion for new trial is not
required in order to present a point of error on appeal, a hearing on the
motion serves to develop evidence that is not otherwise in the record.  See
Oldham v. State, 977 S.W.2d 354, 361
(Tex. Crim. App. 1998).[24]   

            The
thirty-day period in which to file a motion for new trial is a critical stage
of the proceedings, and a defendant has a constitutional right to counsel
during that period.  Cooks v. State, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007); Prudhomme v. State, 28 S.W.3d 114, 119
(Tex. App.Texarkana 2000, order), disp.
on merits, 47 S.W.3d 683 (Tex. App.Texarkana 2001, pet. refd).   When a defendant is represented by counsel
during trial, there is a rebuttable presumption that counsel continued to
represent the defendant during the thirty-day time period for filing a motion
for new trial.  Cooks, 240 S.W.3d at 911; Smith v. State, 17 S.W.3d 660, 662
(Tex. Crim. App. 2000).  The presumption of adequate representation
arises, at least in part, because appointed counsel remains as defendants
counsel for all purposes until expressly permitted to withdraw, even if the
appointment is for trial only.  Nguyen v. State, 222 S.W.3d 537, 540
(Tex. App.Houston [14th Dist.] 2007, pet. refd).  This presumption is not rebutted when there
is nothing in the record to suggest otherwise.  Smith, 17 S.W.3d at 66263
(when no motion for new trial is filed, the rebuttable presumption is that the
motion was considered and rejected by a defendant and his or her counsel).  If this presumption is rebutted with evidence
that the defendant was deprived of adequate counsel during this stage, such
deprivation is subject to a harm analysis. 
Id.

            Here, the
record does not indicate trial counsel withdrew from representation during the
time to present a motion for new trial. 
We, therefore, presume trial counsel informed Seat of his appellate
rights.  Oldham, 977 S.W.2d at 36263.  Nothing in the record suggests that Seats
trial counsel failed to discuss
filing a motion for new trial with Seat and that Seat considered and rejected
the idea.  See Smith, 17 S.W.3d at 662. 


            Here, Seat
has failed to rebut the presumption of adequate representation.  See id.
at 66263.  We overrule Seats final
point of error.

            We affirm
the judgment of the trial court.

 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          May
17, 2011

Date Decided:             June
8, 2011

 

Do Not Publish











[1]Seat
was convicted of the unauthorized use of a motor vehicle, repeat offender.  See
Tex. Penal Code Ann. § 31.07  (Vernon 2011) (unauthorized use of vehicle is
state jail felony); Tex. Penal Code Ann.
§ 12.42 (Vernon 2011) (state jail felony punishable as third-degree felony if
proof at trial shows defendant has previously been finally convicted of two
state jail felonies).

 





[2]The
keys to the truck were inadvertently left in the ignition overnight.  

 





[3]Under
normal circumstances, the record on direct appeal will not be sufficient to
show that counsels representation was so deficient and so lacking in tactical
or strategic decision-making as to overcome the presumption that counsels
conduct was reasonable and professional. 
Mallett v. State,
65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Fuller
v. State, 224 S.W.3d 823, 82829 (Tex. App.Texarkana 2007, no pet.).  In addressing this reality, the Texas Court
of Criminal Appeals has explained that appellate courts can rarely decide the
issue of ineffective assistance of counsel because the record almost never
speaks to the strategic reasons that trial counsel may have considered.  The proper procedure for raising this claim
is therefore almost always by habeas corpus. 
Freeman v. State,
125 S.W.3d 505, 506 (Tex. Crim. App. 2003); Aldrich v. State, 104 S.W.3d 890, 896 (Tex. Crim.
App. 2003).  

 





[4]During
its opening statement, the State commented that:

 

Were going to
wrap this up pretty quick this morning, and then get into the punishment phase,
hopefully where youll understand why were trying this case.  

 

In closing argument, the
State commented that:

 

This case is not
about guilt/innocence because hes guilty. 
This case is about what are we going to do with him after we find him
guilty.  Find him guilty now, and lets
get to the important phase of the trial, which is the punishment.  

 





[5]During
the voir dire, the State commented that, Well there are certain things about
the case that were not going to be able to tell you.  This comment was made in response to a
question by a venire member who wanted to know how Seat obtained the key to the
truck in question.  While the State would
have been better served to respond that the evidence presented in the case
would answer that question, this does not appear to be an insinuation that Seat
had prior criminal convictions.  See Mims v. State, 466 S.W.2d 317 (Tex.
Crim. App. 1971) (it is never proper for prosecutor to imply to jury that he
knows more about accused than the jury has been told).

 





[6]During
voir dire, the State explained that the unauthorized use of a motor vehicle is
normally a state jail felony with a range of punishment of 180 days to two
years, but that under certain aggravating circumstances the punishment range
can be enhanced to that of a third degree felony.  A venire member then asked the prosecutor if
Seat had committed that crime before. 
The prosecutor replied, That is one of those things that we absolutely
cannot talk about at this point.  The
venire member then asked how punishment could range from 180 days to ten
years.  The venire member went on to ask
if Seat was being tried on another case besides unauthorized use of a motor
vehicle.  The prosecutor replied that
this was the only case being tried.  The
venire member then began to ask about past offenses, to which the prosecutor
replied, None of that can be brung up when youre deciding guilt or
innocence.  The venire member replied
that you cant tell us.  The prosecutor
finally told the venire member, There are only certain things we can talk
about at this point.  





[7]Even
if this comment implied Seat engaged in prior criminal conduct, it does not
amount to evidence of an extraneous offense. 
See Belton v. State, 900
S.W.2d 886, 900 (Tex. App.El Paso 1995, pet. refd) (if evidence fails to show
that an offense was committed or that accused was connected to offense, then
evidence of extraneous offense is not established and no harm is shown).

 





[8]During
Whitakers direct examination by the State, the following testimony was
offered:

 

                A:  And when I pulled up to that location, they
advised that Ricky Seat took off running. 

 

                                .
. . .

 

                Q:  Did they tell you the direction he went?

                A:  Said he went -- he went west, and thats back
to the direction of his house.

                Q:  All right.

                A:  So believing that, I spoke to them a little
bit about was -- you know, did they see him in the truck that we was looking
for and they had earlier but that he had come back walking and --

 

Whitaker later explained that after he received this
information, he believed Seat was running back to his house, so Whitaker
circled the area in his search for Seat. 


 





[9]During
further questioning of Whitaker by the State, the following transpired:

 

                Q:  After you got the information from Ms.
Bishop, what did you do then?

                A:  After speaking to Ms. Bishop, I believe Ricky
Seat was in possession of the vehicle because she said he had been driving one
like had been reported stolen.  

                Q:  One that matched the description?

                A:  Thats correct.  I mean, as far as the scratch down the side,
matching information about the description of the vehicle, and him wanting to
get rid of it, I believe that he was in possession of the truck we were looking
for.  





[10]Whitaker
testified that when he was unable to locate Seat, he returned to the group of
people who told him Seat had taken off running.   They were standing around a vehicle, looking
in the engine compartment.  He noticed
they were all looking down, so he looked through the engine compartment and
spotted Seat under the truck.  Seat
complains of the following testimony:

 

                Q:  Did Mr. Seat have any tools in his hand?

                A:  No.

                Q:  He wasnt working on the vehicle?

                A:  No.

                Q:  Hiding from you?

                A:  Yes.

 

Later, Whitaker was asked about the keys to the
missing truck:

 

                Q:  These keys were found in the pocket of the
Defendant?

                A:  The right pocket of Mr. Seat.

                Q:  Who was hiding from you right before you
found him?

                A:  Yes.

 

Seat further complains of Whitakers testimony
regarding his alleged attempt to hide the truck:

 

                Q:  And this is the area of town -- I guess, this
is the dead end?

                A:  Yes, sir, it is.  Its kind of got a little cul-de-sac that he
pulled off to the right side to kind of get it out of view from just looking
down the street.

 

 





[11]Here,
Seat complains of the following direct examination of Whitaker:

 

                Q:  So there is a walking track -- two walking
tracks in the area which is what confirmed what Ms. Bishop told you?

                A:  Thats correct.

                Q:  You have witnesses that describe the pickup
that was stolen that he was driving?

                A:  Yes, sir.

                Q:  Hes got keys to the pickup?

                A:  Yes, sir.

                Q:  He runs from you?

                A:  Yes, sir.

                Q:  He hides from you?

                A:  He did.

                Q:  All right. 
What are we seeing here on 12 thats significant?

                A:  He was seen removing something from the rear
bumper, and it had some kind of sticker on it.

                Q:  All right. 
And that matches up the description of what Mr. Gray told you?

                A:  That was the original description.  Thats correct.

 

 





[12]Gray
testified that he saw Seat [acting] like he was scratching a bumper sticker or
something off the back of [the truck].  

 





[13]Rule
401 defines relevant evidence as evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence.  Tex.
R. Evid. 401.

 





[14]Exhibit
12 is a photograph of the trucks bumper showing scrape marks in an area where
a bumper sticker would commonly be placed.





[15]Seat
complains of the cross-examination of Sylvia Jamerson, Seats mother:

 

                Q:  Who is Rickys dad?

                A:  Dewayne Seat. 
Hes dead.

                Q:  And prior to dying he had spent [the]
majority of his adult life in prison, right?

                A:  No.  

                Q:  He ever been in any trouble?

                A:  He was in trouble.

                Q:  Go to prison?

                A:  No.

 





[16]The
intent to deprive element of automobile theft must be determined from the
words and acts of the accused and it must exist at the time of the taking.  Flores,
888 S.W.2d at 191.

 





[17]In
his opening statement, defense counsel mitigated the effect of the prosecutors
misstatement of the law by stating,

 

The issue will
not be whether someone in this courtroom stole a vehicle.  The issue will be whether there is evidence
that Mr. Seat operated the vehicle, and Im asking you to hold the State to its
burden, that they must prove this case beyond a reasonable doubt.

 

During closing argument of
the guilt/innocence phase, defense counsel clarified,

 

Its not a
question of theft.  He is not being
charged with theft.  The question is operation.

 

Moreover, the law regarding the unauthorized use of a
motor vehicle was correctly stated in the charge to the jury. 

 





[18]The
alleged improper argument was:

 

What would have
been the motive of Ricky Seat to take it to a dead end other than to come back
at a later time and then take it to a chop shop and break it down or sell it or
whatever.  

 





[19]Seat
argues the evidence is both legally and factually insufficient to support his
conviction.  In Brooks v. State, 323 S.W.3d 893, 89495, 91213 (Tex. Crim. App.
2010) (a 4-1-4 decision with one judge joining the lead opinion with a
concurring opinion and another concurring with the lead opinion and joining
that concurrence), a plurality of the Texas Court of Criminal Appeals abolished
the factual sufficiency review established by Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its
progeny. The plurality and the concurring judges agreed that the Jackson v. Virginia, 443 U.S. 307
(1979), legal sufficiency standard is the sole standard that a reviewing court
should apply in determining whether the evidence is sufficient to support each
element of a criminal offense that the State is required to prove beyond a
reasonable doubt.  Brooks, 323 S.W.3d at 89495, 91213.  Since the Texas Court of Criminal Appeals has
abolished factual sufficiency review, we need not address the defendant's
challenge to the factual sufficiency of the evidence.

 





[20]Adams
testified that the truck missing from the car lot, a 2000 or 2001 model
Chevrolet S-10, would have been almost identical to Chevrolet S-10s
manufactured from 1995 to 2005, as they are very close in design with only
small differences.  Adams further
testified that Chevrolet S-10s are very similar to GMC models and it is
difficult to tell them apart.  





[21]The
rule that a plea of not guilty is enough to require the State to prove its
allegation of venue is to place the burden of proof at trial. Article 44.24(a)
is a rule of appellate presumption that the State met its burden of proof
unless during trial accused challenged sufficiency of evidence presented by the
State to show venue.  Holdridge, 707 S.W.2d at 21.

 





[22]Seat
was convicted on September 13, 2010. 
Appellate counsel was appointed on October 20, 2010.

 





[23]Seat
claims he filed a pro se notice of appeal and paupers oath of defendant on
appeal.  The notice of appeal is signed
by trial counsel.  The paupers oath of
defendant on appeal, a separate document filed on the same day as the notice of
appeal, is signed only by Seat. 

 





[24]Seat
indicates that a motion for new trial should have been filed in order to
develop his claims of ineffective assistance of counsel.  The Texas Court of Criminal Appeals has held
that when direct appeal has not provided an adequate record to evaluate a
claim which might be substantiated through additional evidence gathered in a
habeas corpus proceeding, we will not apply the general doctrine that forbids
raising a claim on habeas corpus after it was rejected on appeal.  Ex
parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997).  Jackson
v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).