**Joseph James URBANSKI, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–97–00735–CR.**

Court of Appeals of Texas, Dallas.

May 10, 1999.

James M. Murphy, Attorney at Law, Dallas, for Appellant.

Manuel E. Gonzalez, Assistant Criminal District Attorney, McKinney, for the State.

Before Justices MORRIS, WHITTINGTON, and MOSELEY.

## OPINION

JOSEPH B. MORRIS, Justice.

This case involves the crime of harboring a runaway child. In appealing his conviction, Joseph James Urbanski, Jr., challenges the sufficiency of the evidence to prove certain elements of the offense. More specifically, appellant claims the evidence does not show he harbored the child or that the child was, in fact, a runaway because she was not away from her home for a substantial length of time. Appellant also challenges the sufficiency of the evidence to prove venue. We conclude the evidence is sufficient in all respects and affirm the trial court's judgment. We reach our conclusion after determining the meaning of "harbor" and "substantial length of time" as used in the statute defining the offense.

### Factual Background

The facts are largely undisputed. Appellant met the child in this case, Emily, through a computer bulletin board. The two eventually met in person at a bulletin board get-together. They secretly met each other five or six times after that. Emily testified she may have had a "crush" on appellant and thought appellant had feelings for her. Appellant knew Emily was sixteen years old. Appellant was twenty-six.

Some time after she met appellant, Emily met another bulletin board participant named Desiree. On the night of the offense, Emily asked her parents if Desiree could take her to a bulletin board get-together at a bowling alley in Arlington. Emily and her parents lived in Dallas. Her parents refused to let her go. Emily told Desiree she wanted to run away from home. Later that evening, Emily and appellant discussed Emily's running away. They agreed that Emily would sneak out of her house, and appellant would take her to the get-together in Arlington.

Appellant drove to Emily's house at about 11 p.m. Emily climbed out of her bedroom window to meet appellant. She brought along a small gym bag containing her contact lens supplies and a change of clothes. Appellant drove them to the bowling alley in Arlington.

At the bowling alley, Emily met Desiree. For about an hour and a half, Desiree tried to convince Emily not to run away. Fearing for Emily's safety, she asked Emily to come home with her instead of going with appellant. These conversations were held in appellant's presence, yet appellant encouraged Emily to stay with him. Desiree was unable to convince Emily otherwise, and at about 1:30 a.m., Emily left the bowling alley with appellant.

Appellant drove Emily to a friend's house in Irving, where they stayed the night. In the morning, Emily said she wanted to go home, but appellant did not offer to take her home. Instead, appellant drove Emily to his parents' house in Fort Worth. When they arrived, Emily saw on a table a piece of paper with her father's name and telephone number on it. She

and appellant then knew her parents were looking for her.

Appellant accessed the bulletin board from the computer in his house. After communicating with some people through the computer, they confirmed that Emily's parents were looking for her. Appellant became worried that he would get in trouble. Emily called Desiree and asked if she could stay at Desiree's apartment. Desiree testified that, during this call, she heard appellant in the background telling Emily to hang up, that they had to get out of the house. Emily hung up the telephone, and they left appellant's house. Eventually, they called Desiree again from a public telephone in a shopping mall, and Desiree gave appellant directions to her apartment in Allen. Emily said she and appellant went to Desiree's apartment because it was "a place to be for the time being."

Unknown to appellant and Emily, Desiree contacted Emily's parents and disclosed Emily's whereabouts. As a result, Emily's father was waiting for appellant and Emily when they arrived at Desiree's apartment at about 4:30 p.m. Emily's father, who was a Garland police officer, arrested appellant as he walked with Emily toward Desiree's apartment. Police officers from Allen arrived and arrested Emily as a runaway.

Emily testified she did not intend to run away "forever." She explained that it could have been for a week or a year, but that she and appellant knew it was at least for one night. She stated that appellant was the one who planned what they would do after leaving the bowling alley. She also said that, even after they realized Emily's parents were looking for her, she knew appellant would not "pull out" and take her home, and she did not want to go home. She said appellant never suggested taking her home or to a place where her parents could pick her up.

Emily's father testified that Emily did not have permission to be away from home. An Allen police officer testified that Desiree's apartment was located in Collin County. Appellant did not testify or call any witness in his defense.

The trial court, sitting without a jury, convicted appellant of harboring a runaway child. Appellant timely appealed, asserting thirteen points of error.

### DISCUSSION

In his first six points of error, appellant contends the evidence is legally insufficient to support his conviction for harboring a runaway child. The standard for reviewing a legal insufficiency claim is well established. See Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App.), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). We examine the evidence in the light most favorable to the trial court's judgment and determine whether any rational trier of fact could have found beyond a reasonable doubt those elements of the offense that appellant challenges on appeal.

The penal code provides, in pertinent part, that a person commits the misdemeanor offense of harboring a runaway child if he knowingly harbors a child and is criminally negligent about whether the child is (1) younger than eighteen years, and (2) voluntarily absent from the child's home without the consent of the child's parent or guardian for a substantial length of time or without intent to return. See TEX. PENAL CODE ANN. § 25.06(a) (Vernon 1994). The information in this case alleged, in relevant part, that appellant harbored Emily in three different ways: by providing her shelter, transportation, and his home.[1]

---

1. The State also alleged appellant harbored Emily by providing her a hotel room. The trial court granted appellant's "motion for acquittal" as to this allegation. Accordingly, it has no bearing on this appeal.

Appellant initially contends the evidence is insufficient to prove he "harbored" Emily. In particular, appellant contends that the acts alleged by the State of providing shelter, transportation, and his residence to Emily could not by law constitute "harboring." [2] He argues the State had to prove, but did not, that he "intended" to prevent Emily's discovery and engaged in "affirmative" physical acts that helped Emily avoid detection or apprehension.

The word "harbor" is not statutorily defined, and its meaning has not been addressed by a Texas appellate court. Because it is not statutorily defined, we give the word its plain meaning. *See Heberling v. State,* 834 S.W.2d 350, 354 (Tex.Crim. App.1992). Statutory words must be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T.CODE ANN. § 311.011(a) (Vernon Supp.1999).

The word "harbor" has universally accepted meanings. Its most commonly recognized meanings as a verb are "to give shelter to" and "to give refuge to" someone. *See* THE CONCISE OXFORD DICTIONARY 618 (9 th ed.1995); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1031 (1993); THE AMERICAN HERITAGE DICTIONARY 822 (3 rd ed.1992); CAGE CANADIAN DICTIONARY 532 (1983). Further, the definition of "refuge" includes protection, or a source of help, relief, or comfort. *See* THE AMERICAN HERITAGE DICTIONARY 1319 (3 rd ed.1992).

Applying these definitions, the word "harbor," in the context of penal code section 25.06, necessarily connotes the act of giving shelter or refuge to a runaway child. We conclude, therefore, that the definition of "harbor" is broad enough to encompass providing a runaway child with shelter, transportation, or a home, as alleged by the State. Accordingly, we reject appellant's argument that the State's allegations cannot by law constitute "harboring."

We also reject appellant's assertion that the State had to prove he "intended" to harbor Emily. In proving the harboring element of the offense, the State was required only to prove that appellant "knowingly" harbored Emily.[3] *See* TEX. PENAL CODE ANN. § 25.06(a) (Vernon 1994). Consequently, we review the evidence to determine if any rational fact finder could conclude beyond a reasonable doubt that appellant knowingly gave shelter or refuge to Emily.

Facts showing that appellant knowingly harbored Emily are plentiful. After he and Emily discussed her running away from home, appellant arranged to pick her up in his car when she sneaked out of her bedroom late at night. At the bowling alley, appellant encouraged Emily not to go home with Desiree, but to stay with him. Appellant arranged to stay at a friend's house overnight, and he drove Emily there. The next day, after seeing Emily's father's name on a note in his home, he used his computer to confirm Emily's parents were looking for her. Appellant urged Emily to hang up the telephone when she was talking to Desiree so they could leave his home. Knowing that Emily's father had been in contact with his parents, and after confirming that fact through the computer, he took Emily to Desiree's apartment rather than take her

**2.** We acknowledge this issue is, technically, an alleged charging instrument defect that is waived under *Studer v. State,* 799 S.W.2d 263 (Tex.Crim.App.1990). Nonetheless, we will address the issue because we must determine the meaning of the word "harbor" before addressing appellant's general insufficiency complaint.

**3.** Of course, "knowingly" is not the only mental state applicable to the offense. The State must prove appellant was "criminally negligent" about whether Emily was younger than eighteen and voluntarily absent from home without her parents' consent for a substantial length of time or without intent to return. *See* TEX. PENAL CODE ANN. § 25.06(a)(1), (2) (Vernon 1994). Because appellant does not challenge the evidence supporting proof of criminal negligence, we do not discuss it here.

home. He was caught and arrested while escorting Emily to Desiree's apartment. Appellant never suggested Emily go home but, in fact, took action that he thought would help them evade her parents by going to Desiree's apartment in Allen. Based on these facts and the plain meaning of "harbor," we conclude appellant knowingly harbored Emily as alleged by the State. By providing transportation in his car, shelter overnight, and the use of his home, appellant gave Emily shelter or refuge.

■ Appellant next challenges Emily's status as a runaway. Specifically, he contends the evidence is insufficient to show Emily was absent from her home for a "substantial length of time." *See* TEX. PENAL CODE ANN. § 25.06(a)(2) (Vernon 1994). Appellant argues that any amount of time less than twenty-four hours can never be a substantial length of time by law. His argument is based on the fact that it is a defense to harboring a runaway child if the actor notifies a law enforcement agency or person at the child's home of the child's presence within twenty-four hours after discovering the child is a runaway. *See id.* § 25.06(c)(2). Appellant argues that, by providing this defense, the legislature showed its intent that a "substantial length of time" necessarily means some length of time more than twenty-four hours. We disagree.

First, we note that appellant's argument is logically flawed. To hold, as appellant urges us to hold, that an offense does not occur until a person has knowingly harbored a runaway child for at least twenty-four hours would vitiate the defense. By definition, the defense is only available within the first twenty-four hours occurring after discovery of the child's runaway status, regardless of how long the child has been a runaway. Yet, under appellant's interpretation of the statute, the offense would not arise until the end of that twenty-four hour period. In effect, the statutory defense would never exist under appellant's interpretation. In addition, such a

contorted interpretation would have the unwanted effect of encouraging people to harbor runaways knowing they would not be subject to prosecution for a twenty-four-hour period after they learned about the child's runaway status. Clearly, that is not the purpose of the defense.

In applying a statute, we presume every word in the statute has been used for a purpose, and each word, phrase, clause, and sentence should be given effect if reasonably possible. *See State v. Hardy,* 963 S.W.2d 516, 520 (Tex.Crim.App.1997). Thus, if the legislature intended "a substantial length of time" in every case to mean more than twenty-four hours, it would have used the words "more than twenty-four hours" rather than "a substantial length of time." Because it did not, we conclude the legislature intended "a substantial length of time" to mean something different than "more than twenty-four hours."

■ Rather than assign a fixed number to the meaning of the term, the legislature left the issue to the fact finder to determine on a case by case basis. Whether a child's period of absence is "substantial" depends upon many factors, including the duration of the child's absence, the time of day, the intent of the child in returning, and the authorization, if any, for the child's absence. *See Barrow v. State,* 973 S.W.2d 764, 768 (Tex.App.-Amarillo 1998, no pet.). To this non-inclusive list, we would also add the child's age, the child's motive for running away, the child's activity during the absence, the child's distance from home, and the number, age, maturity, and experience of the persons, if any, accompanying or assisting the child during the absence. We believe these factors may impact the determination of whether the length of a particular child's absence from home is "substantial." This flexible interpretation of the statute is reasonable. Moreover, unlike appellant's proposed interpretation, our interpretation does not conflict with or vitiate the defense set out in subparagraph (c)(2) of section 25.06.

Using the criteria set out above, we conclude Emily was absent from her home for a substantial period of time. The evidence reflects that Emily, a child of sixteen, (1) left home late at night when she was supposed to be sleeping, (2) left home after being denied permission to attend a late night party in another city, (3) was accompanied and transported to that party by appellant, a man ten years older than she, (4) admittedly had a "crush" on appellant and thought he had feelings for her, (5) was taken to three different counties during the course of her absence, (6) remained absent overnight for approximately seventeen hours, and (6) knowingly evaded her parents' efforts to locate her. Considering the circumstances under which Emily left home and remained absent, the evidence sufficiently supports the conclusion that the duration of her absence was "substantial." *See id.* (holding that five-hour absence was substantial length of time under the circumstances).

■ Appellant does not challenge the sufficiency of the evidence to support any of the other elements that constitute harboring a runaway child. We must affirm appellant's conviction based on the evidence discussed above if it sufficiently proves any one of the alternative theories alleged by the State in the information. *See Rogers v. State,* 774 S.W.2d 247, 251 (Tex.Crim.App.), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989). Accordingly, in light of the foregoing discussion and all the facts in the record, we conclude the evidence is legally sufficient to show appellant knowingly harbored Emily, a sixteen year-old child, by providing her shelter, transportation, and use of his home, and was criminally negligent about whether Emily was voluntarily absent from home without her parents' consent for a substantial length of time. We need not discuss the sufficiency of the evidence to support the State's alternative allegation that Emily had no intent to return home. We overrule appellant's first, second, third, fourth, fifth, and sixth points of error.

In his seventh, eighth, ninth, and tenth points of error, appellant challenges the factual sufficiency of the evidence for essentially the same reasons set forth in his first six points of error. The standard of review in analyzing a claim of factual insufficiency is clearly established. *See Scott v. State,* 934 S.W.2d 396, 399 (Tex.App.-Dallas 1996, no pet.). We simply review the evidence in support of and contrary to the trial judge's finding to determine whether the judgment is so contrary to the great weight of the evidence as to be clearly wrong and unjust. *See id.*

■ Appellant contends the evidence is factually insufficient because there is a reasonable alternative hypothesis to guilt in this case, namely, that Emily was rebelling against her parents by sneaking out of the house to attend a social function and that Emily's father, being a police officer, overreacted to the situation. We note initially that we may not set aside a conviction for factual insufficiency simply because a different result might be more reasonable. *See Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Thus, the mere existence of an alternative reasonable hypothesis of innocence does not render the evidence factually insufficient. *See Richardson v. State,* 973 S.W.2d 384, 387 (Tex.App.-Dallas 1998, no pet.).

Appellant did not present any evidence at trial. His argument reasserts the same arguments made in his challenge to the legal sufficiency of the evidence, focusing in particular on the evidence that Emily did not intend to leave home forever but did intend to return at some point. As discussed above, the State did not have to prove its alternative allegation that Emily had no intent to return home, because it adequately proved that she was absent for a substantial length of time. Having reviewed all the evidence in the record under the applicable standard of review, we cannot conclude the evidence produced by the State is so uncertain, inconsistent, improbable, or unbelievable that it would be clear-

ly unjust to allow the conviction to stand. We also cannot conclude the trial court's findings are against the great weight of the evidence. Because we conclude the judgment is supported by factually sufficient evidence, it is unnecessary for us to detail further the evidence relevant to this issue. *See Scott,* 934 S.W.2d at 402. We overrule appellant's seventh, eighth, ninth, and tenth points of error.

 In his eleventh, twelfth, and thirteenth points of error, appellant challenges the legal and factual sufficiency of the evidence to prove venue. Venue is a non-criminative fact that the State must prove by a preponderance of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 13.17 (Vernon 1977); *Lozano v. State,* 958 S.W.2d 925, 929 (Tex.App.-El Paso 1997, no pet.). The proper county for the prosecution of this offense is the county in which it was committed. *See* TEX.CODE CRIM. PROC. ANN. art. 13.18 (Vernon 1977). In this case, the State alleged and, thus, had to prove that venue was proper in Collin County. We assume, without deciding, that appellant is entitled to a factual as well as legal sufficiency review, and our conclusion that the evidence is sufficient to prove venue is based upon the application of both standards of review.

Appellant asserts that the only act committed by him in Collin County was the act of transporting Emily to Desiree's apartment in Allen. He further asserts that no criminal act was committed in Collin County because appellant transported Emily to Desiree's apartment for the sole purpose of returning Emily to her home. Appellant misrepresents the facts in the record.

Desiree testified that appellant intended to drop Emily off at Desiree's apartment and leave. This does not support appellant's assertion that, in doing so, appellant intended to return Emily home. To the contrary, the record indicates that Emily and appellant fled appellant's parents' home because they knew Emily's father had been in contact with appellant's parents. They called Desiree from a shopping mall to get directions to Desiree's

apartment. Appellant and Emily did not know Desiree had been in contact with Emily's father. Appellant did not know that Emily's father would be at Desiree's apartment. Emily specifically testified that it was never appellant's idea to take her home or to any place where her parents could pick her up. She specifically denied going to Desiree's apartment so that her parents could pick her up. Indeed, Emily left her overnight bag in appellant's car when the two of them walked up to Desiree's apartment door. This evidence shows appellant did not drive Emily to Desiree's apartment with the intent that Emily return home. At best it shows-as Desiree testified-that appellant simply wanted to wash his hands of the situation because he realized he was in over his head.

The record shows the offense in this case was committed in three different counties. Venue is proper in any county where the offense was committed. Appellant provided Emily transportation to Desiree's apartment for the purpose of concealing her or getting her shelter there. Desiree's apartment was located in Collin County. Consequently, the State properly proved venue in Collin County. We overrule appellant's eleventh, twelfth, and thirteenth points of error.

We affirm the trial court's judgment.