TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00176-CV







In the Matter of A.L.R.







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. J-21,170, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING




 Appellant A.L.R., a juvenile, was adjudicated delinquent for the offense of the
unauthorized use of a motor vehicle and was placed on nine months' probation in her mother's
custody. See Tex. Pen. Code Ann. § 31.07(a) (West 1994). She appeals, arguing the evidence is
legally and factually insufficient to support her adjudication. We will affirm.

 Austin Police Officer John Hitzelberg testified that on June 30, 2001, he responded
to a call for assistance from another police officer. He arrived at the scene in his marked patrol car,
where he found A.L.R. already in police custody. He also saw two automobiles at the scene, a 1989
Cadillac and a 1987 Oldsmobile; the Cadillac had been reported stolen and both cars had damaged
steering columns. Hitzelberg spoke to A.L.R. and then transported her to the Gardner-Betts Juvenile
Detention Center.

 The owner of the 1987 Oldsmobile testified that he parked his car in front of his
apartment on June 30; the next morning, the car was gone. He recovered it two days later with a
broken back window and a "busted" steering wheel. He testified that he did not know A.L.R. and
had not given her permission to use his car. He never saw A.L.R. driving his car.

 Austin Police Officer Kenneth Cavett testified that he was on patrol at about 3:30 a.m.
when he observed two cars, a Cadillac and an Oldsmobile, being driven suspiciously. It appeared
to Cavett that the Oldsmobile was following the Cadillac, which had its lights off part of the time. 
He followed both cars through a residential area until the Cadillac sped up and Cavett lost sight of
it. He did not attempt to pursue the Cadillac because "we're no longer allowed to pursue somebody
for a traffic violation. All it had done at that time was had it's [sic] lights off." Cavett testified that
he observed the cars for no more than three minutes. Cavett continued to follow the Oldsmobile but
did not turn on his flashing lights. Cavett was about three houses behind the Oldsmobile when it
pulled alongside a curb and stopped. Two females got out of the car, one from each side, and ran
off to the east. He said, "They were either white or Hispanic females. One was wearing a red top
and the other one had on a light or, I believe, a tan colored top." Cavett said the female who ran
from the driver's side was wearing the red shirt. Cavett said that there were street lights on the street
corners and that it was dark in the middle of the blocks.

 Cavett's first thought was that "some kids had snuck out of the house and had their
parent's car or somebody else's car." However, when he neared the Oldsmobile, he saw parked in
front of it a Cadillac that looked like the one he had seen earlier. The engines on both cars were
running and both steering columns were broken. Cavett used his radio to report the apparently stolen
cars and turned on his overhead lights. Cavett said that "[a]t least five minutes, maybe longer"
passed between the time he stopped behind the Oldsmobile and when he began to look for the people
who had run from the car; he did not hear anything during that time. When backup arrived, Cavett
walked in the direction the two females had fled. He testified:

As I walked down the side of that house [where the two females had run], it had a
probably six-foot wooden fence around the backyard, but the gate on the side was
actually a wire mesh. But it was like four-inch square large piece [sic]. Large holes
in the wire mesh where somebody could actually climb over the gate if they had
wanted to. Right in front of the gate I noticed a pair of leather sandals where
somebody either lost their shoes or kicked them off to go over the gate. And then I
glanced off to my right and saw a female hiding behind the bush.



Cavett said the female who was hiding was wearing a red top similar to "the female that [he] had
seen leaving the driver's side of the Oldsmobile." Cavett took her into custody and then released
her into Hitzelberg's custody. Cavett said the fence and gate were visible from where the stolen cars
were parked; he never saw anyone climb the gate while he was near the cars. Cavett identified
A.L.R. as the female in the red shirt whom he found hiding in the bush. A.L.R. is a Hispanic female. 
Cavett assumed A.L.R. was the female he saw run from the driver's side of the Oldsmobile; he never
found the other female.

 A.L.R. did not present any evidence or testimony at the adjudication hearing. On
appeal, she contends that the evidence is legally and factually insufficient to establish that she was
the female that Cavett saw run from the Oldsmobile. She asserts that the evidence "leaves open the
possibility that [A.L.R.] was just hiding in the bushes because she was out late and/or has runaway
[sic]." She also asserts that there is reasonable doubt as to whether she was the one driving the car.

 We review adjudications of delinquency in juvenile proceedings under the same
standards of review we use to review the sufficiency of the evidence supporting a jury's verdict in
a criminal case. In re L.M., 993 S.W.2d 276, 284 (Tex. App.--Austin 1999, pet. denied). The State
must prove beyond a reasonable doubt that the juvenile committed an offense, thus engaging in
delinquent conduct. Tex. Fam. Code Ann. § 54.03(f) (West 2002); In re B.M., 1 S.W.3d 204, 206
(Tex. App.--Tyler 1999, no pet.). When reviewing the legal sufficiency of evidence, we view the
evidence in the light most favorable to the verdict to determine whether a rational finder of fact could
have found all the essential elements of the crime beyond a reasonable doubt. Cantu v. State, 994
S.W.2d 721, 726 (Tex. App.--Austin 1999), pet. dism'd, improvidently granted,19 S.W.3d 436
(Tex. Crim. App. 2000); L.M., 993 S.W.2d at 284. A factual sufficiency review asks whether a
neutral review of all the evidence, including defense testimony and any reasonable alternative
hypotheses, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by
contrary proof as to undermine confidence in the jury's determination. Johnson v. State, 23 S.W.3d
1, 9 (Tex. Crim. App. 2000); Cantu, 994 S.W.2d at 727. We will not set aside a verdict merely
because we believe that another result is more reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). The existence of alternative hypotheses explaining the facts does not render the
evidence factually insufficient. Urbanski v. State, 993 S.W.2d 789, 795 (Tex. App.--Dallas 1999,
no pet.); see Roberts v. State, 9 S.W.3d 460, 464 (Tex. App.--Austin 1999, no pet.) ("Circumstantial
evidence need not exclude all reasonable alternative hypotheses."). The trier of fact resolves any
evidentiary conflicts, evaluates witness credibility, and determines the weight to be given the
evidence. Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); Shelton v. State, 41
S.W.3d 208, 211 (Tex. App.--Austin 2001, no pet.).

 A person commits an offense under section 31.07 if she intentionally or knowingly
operates a car belonging to another person without the owner's effective consent. Tex. Pen. Code
Ann. § 31.07(a). Officer Cavett saw two white or Hispanic females get out of a car that turned out
to be stolen by way of a broken steering column and run east, down the side of the houses on the
street. The female who got out of the driver's side of the stolen car was wearing a red shirt. He
waited for backup for about five minutes, during which time he did not hear anyone moving about,
and then walked in the direction the two females had run. These events occurred in the very early
morning, at about 3:45 a.m., Cavett did not hear any other movement after the two females ran from
the car, the female in the red shirt got out of the driver's side, and Cavett found A.L.R., wearing a
red shirt and hiding in the bushes nearby. Considering only the evidence that supports the district
court's finding, we hold the evidence is legally sufficient to support the court's judgment. See L.M.,
993 S.W.2d at 284.

 On appeal A.L.R. contends that the evidence does not show that she was the red-shirted female Cavett saw run from the Oldsmobile; she asserts that she may have been hiding
because she had snuck out of the house. During her closing argument, A.L.R.'s trial counsel argued
that the evidence was insufficient to show "that she was knowingly and intentionally operating the
vehicle." A.L.R. further argued that the female in the red shirt may not have been driving the stolen
car, saying, "It's possible that if she was in the car it's possible she could have left the driver's side
of the car and not be the one driving it." That hypothesis would require that in the brief time
between when the car stopped and the females got out, they climbed over one another to get out of
the opposite doors from where they sat, which hardly amounts to a reasonable alternative hypothesis. 
Moreover, this assertion was made by trial counsel during closing argument and does not amount
to evidence. See Berrios-Torres v. State, 802 S.W.2d 91, 96 (Tex. App.--Austin 1990, no pet.)
("statements of counsel are not evidence"). Even if it did, the existence of a reasonable alternative
hypothesis does not require a finding that the evidence is factually insufficient. See Urbanski, 993
S.W.2d at 795. We hold that the circumstantial evidence, as recited above, even when considered
in a neutral light, is sufficient to support the district court's finding that A.L.R. operated the
Oldsmobile without the owner's effective consent and committed delinquent conduct. See Cantu,
994 S.W.2d at 727. We affirm the district court's adjudication of delinquency.



 

 David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: December 19, 2002

Do Not Publish