

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00197-CR

_____


RICKY JOEL SEAT, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 23747



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Ricky Joel Seat was convicted of the unauthorized use of a motor vehicle and sentenced by jury to ten years' imprisonment in the Texas Department of Criminal Justice—Institutional Division.[1]   On appeal, Seat claims that he received ineffective assistance of counsel in violation of the United States and Texas Constitutions, that the evidence was insufficient to support conviction, and that he was denied the right to counsel during the thirty-day time period in which to file a motion for new trial.   We affirm the judgment of the trial court.

## I.      Facts

When Steven Adams arrived at work at Pat Swaim's Auto Sales on the morning of April 16, 2010, he noticed a year model 2000 red Chevrolet S-10 pickup truck was missing from the lot.[2]   Adams contacted the police, and a report was made.   Shortly thereafter, Adams learned that Gene Gray saw the missing truck earlier that same morning at the home of Seat's girlfriend. Adams then began a search for the missing truck on his own and located the truck in a wooded area near a walking track.   Upon finding the missing truck, Adams contacted the Paris Police Department.   Two officers arrived at the location a short time later, along with Seat, who had been apprehended.   Officer David Whitaker located a set of keys in Seat's pocket, one of which

---

[1]Seat was convicted of the unauthorized use of a motor vehicle, repeat offender.   *See* TEX. PENAL CODE ANN. § 31.07 (Vernon 2011) (unauthorized use of vehicle is state jail felony); TEX. PENAL CODE ANN. § 12.42 (Vernon 2011) (state jail felony punishable as third-degree felony if proof at trial shows defendant has previously been finally convicted of two state jail felonies).

[2]The keys to the truck were inadvertently left in the ignition overnight.

operated the truck's door lock and ignition.

## II.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution grants an accused the right to have the assistance of counsel for his or her defense, a right that has been interpreted to require the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Sixth Amendment's guarantee of assistance of counsel is binding on the states by operation of the Fourteenth Amendment. *McCoy v. Court of Appeals*, 486 U.S. 429, 435 (1988). A conviction resulting from ineffective assistance of counsel is constitutionally infirm. *Strickland*, 466 U.S. at 688.

Seat claims that his trial counsel rendered ineffective assistance under the state and federal Constitutions. Ineffective assistance of counsel claims are evaluated under the two-part test formulated by the United States Supreme Court in *Strickland*, requiring a showing of both deficient performance and prejudice. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd). Ineffective assistance of counsel claims "are not built on retrospective speculation," but must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

To prevail on this claim, Seat must prove by a preponderance of the evidence that (1) his

3

counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 688; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and was motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Under this standard, a defendant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

Seat argues his trial counsel was ineffective because he: (1) failed to object to several comments by the State's attorney; (2) failed to object to improper testimony from the State's witnesses; (3) failed to object to irrelevant questions, misstatements of the law, and improper jury argument. Because the record is silent regarding counsel's reasons for failing to make the foregoing objections, we will assume it was due to any strategic motivation that can be imagined.[3]

---

[3]Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Fuller v. State*, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007, no pet.). In addressing this reality, the Texas Court of Criminal Appeals has explained that appellate courts can rarely decide the issue of ineffective assistance of counsel because the record almost never speaks to the strategic reasons that trial counsel may have considered. The proper

4

*Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

### A.      Failure to Object to State's Comments

Seat initially complains that trial counsel did not object to comments made during the guilt/innocence phase that dealt with punishment.[4]  The prosecutor's remarks do not imply that the jury should ignore its duty to decide guilt or innocence.  Rather, these remarks appear to be directed to the State's assessment of the strength of the case.  *See Mann v. State*, 718 S.W.2d 741, 744–45 (Tex. Crim. App. 1986), *overruled on other grounds by Mayes v. State*, 816 S.W.2d 79 (Tex. Crim. App. 1991) (prosecutor's remarks asking jury to find defendant guilty so "we can get on with what this trial is all about" directed to obvious strength of prosecutor's case).  Even assuming the prosecutor's remarks were objectionable, counsel could have reasoned that an objection might draw attention to the comments, thus giving the appearance that Seat was guilty. Instead, both in the defense opening statement and closing argument, counsel maintained the case

---

procedure for raising this claim is therefore almost always by habeas corpus.  *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003).

[4]During its opening statement, the State commented that:

> We're going to wrap this up pretty quick this morning, and then get into the punishment phase, hopefully where you'll understand why we're trying this case.

In closing argument, the State commented that:

> This case is not about guilt/innocence because he's guilty.  This case is about what are we going to do with him after we find him guilty.  Find him guilty now, and let's get to the important phase of the trial, which is the punishment.

was about the State's duty to prove each element of the alleged crime beyond a reasonable doubt, or the jury must acquit. We cannot say that defense counsel's strategy was so ill-advised as to fall outside the broad range of reasonable professional assistance.

Next, Seat complains trial counsel failed to object to the prosecutor's comment during voir dire implying there were things about the case the jury could not know during the guilt/innocence phase of the trial.[5] Given the context in which this comment was made, it was not objectionable, but merely an attempt to avoid improperly answering questions from members of the jury panel. We do not find this to be deficient performance.

Seat further complains of counsel's failure to object to the State's implication during voir dire that Seat was a convicted felon.[6] Both the State and the accused have the right to inform the jury of the range of punishment applicable to an offense, including a range that is enhanced, and to

---

[5]During the voir dire, the State commented that, "Well there are certain things about the case that we're not going to be able to tell you." This comment was made in response to a question by a venire member who wanted to know how Seat obtained the key to the truck in question. While the State would have been better served to respond that the evidence presented in the case would answer that question, this does not appear to be an insinuation that Seat had prior criminal convictions. *See Mims v. State*, 466 S.W.2d 317 (Tex. Crim. App. 1971) (it is never proper for prosecutor to imply to jury that he knows more about accused than the jury has been told).

[6]During voir dire, the State explained that the unauthorized use of a motor vehicle is normally a state jail felony with a range of punishment of 180 days to two years, but that "under certain aggravating circumstances the punishment range can be enhanced to that of a third degree felony." A venire member then asked the prosecutor if Seat had committed "that crime" before. The prosecutor replied, "That is one of those things that we absolutely cannot talk about at this point." The venire member then asked how punishment could range from 180 days to ten years. The venire member went on to ask if Seat was being tried on another case besides unauthorized use of a motor vehicle. The prosecutor replied that this was the only case being tried. The venire member then began to ask about past offenses, to which the prosecutor replied, "None of that can be brung up when you're deciding guilt or innocence." The venire member replied that "you can't tell us." The prosecutor finally told the venire member, "There are only certain things we can talk about at this point."

6

qualify the panel on the full range of punishment. *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. [Panel Op.] 1982) (prosecutor may inform jury panel of range of punishment applicable if State were to prove prior conviction for enhancement purposes, but may not inform jury of specific allegations in enhancement paragraph); *Hart v. State*, 173 S.W.3d 131, 142 (Tex. App.—Texarkana 2005, no pet.). The statements here by State's counsel do not attempt to inform the jury of the specific allegations in the enhancement paragraph; trial counsel's failure to object under these circumstances does not amount to deficient performance.

### B.      Failure to Object—Police Officer Testimony

Seat also complains of counsel's failure to object to Whitaker's testimony that, after receiving certain information, he went to Seat's house, stating, "I know he lives on -- Cedar Street because I've been over there before." Seat contends this statement implies he committed previous crimes, evidence of which is inherently prejudicial. *See Jackson v. State*, 320 S.W.3d 873, 889 (Tex. App.—Texarkana 2010, pet. ref'd). Whitaker's comment was unsolicited and did not mention prior criminal conduct. This statement does not necessarily imply previous criminal conduct by Seat.[7] Police officers are called to various locations for many reasons; Seat or someone at his home may have required the assistance of police. Any objection based on the premise that Whitaker's comment referenced prior criminal conduct may have served only to

---

[7]Even if this comment implied Seat engaged in prior criminal conduct, it does not amount to evidence of an extraneous offense. *See Belton v. State*, 900 S.W.2d 886, 900 (Tex. App.—El Paso 1995, pet. ref'd) (if evidence fails to show that an offense was committed or that accused was connected to offense, then evidence of extraneous offense is not established and no harm is shown).

7

validate such an inference. Counsel's decision not to object was not deficient performance.

Next, Seat contends counsel was ineffective because he failed to object to hearsay testimony from Whitaker concerning information received from an unidentified witness.[8] Trial counsel may have chosen not to object based on the premise that the testimony was not hearsay. Extrajudicial statements offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). Counsel could have believed this testimony not objectionable because it was offered not to prove the truth of the matters asserted, but to illustrate the steps in Whitaker's investigation. *See Crivello v. State*, 4 S.W.3d 792, 800–01 (Tex. App.—Texarkana 1999, no pet.) (permissible for officer to testify that he was acting in response to "information received").

When Whitaker returned to speak with the unidentified witnesses, he located Seat hiding under the truck (not the missing truck) the witnesses were standing around. Counsel presumably was aware of the circumstances of his client's apprehension, and the statement that Seat ran could

---

[8]During Whitaker's direct examination by the State, the following testimony was offered:

A: And when I pulled up to that location, they advised that Ricky Seat took off running.

. . . .

Q: Did they tell you the direction he went?
A: Said he went -- he went west, and that's back to the direction of his house.
Q: All right.
A: So believing that, I spoke to them a little bit about was -- you know, did they see him in
the truck that we was looking for and they had earlier but that he had come back walking and --

Whitaker later explained that after he received this information, he believed Seat was running back to his house, so Whitaker circled the area in his search for Seat.

8

reasonably be understood as an explanation of the steps taken to locate Seat. As such, the statement may not have been hearsay. Said another way, the conclusion that Whitaker's testimony was offered to prove the truth of statements made outside the courtroom was not inescapable. *See Thornton v. State*, 994 S.W.2d 845, 854 (Tex. App.—Fort Worth 1999, pet. ref'd). In any event, "A lawyer may well choose not to object to hearsay or other inadmissible evidence if it potentially enhances his client's defense or at least does not seriously prejudice it." *Thompson,* 9 S.W.3d at 813. On this record, we cannot say that defense counsel's strategy was so ill-advised as to fall outside the broad range of reasonable professional assistance.

Seat further contends his trial attorney provided ineffective assistance because he did not object to Whitaker's testimony regarding Seat's guilt.[9] Seat maintains that because Whitaker improperly stated his opinion that Seat was in possession of the vehicle, an issue ultimately to be decided by the jury, trial counsel should have objected. Whitaker did not testify that Seat was guilty; he merely testified that he believed Seat was in possession of the missing vehicle. Nevertheless, under Texas Rule of Evidence 704, a lay witness may offer an opinion on an ultimate issue. *Ex parte Nailor*, 149 S.W.3d 125, 134–35 (Tex. Crim. App. 2004). Seat offers

---

[9]During further questioning of Whitaker by the State, the following transpired:

> Q: After you got the information from Ms. Bishop, what did you do then?
> A: After speaking to Ms. Bishop, I believe Ricky Seat was in possession of the vehicle because she said he had been driving one like had been reported stolen.
> Q: One that matched the description?
> A: That's correct. I mean, as far as the scratch down the side, matching information about the description of the vehicle, and him wanting to get rid of it, I believe that he was in possession of the truck we were looking for.

no argument as to whether this testimony would have properly been admitted under Rule 704 or under Rule 701 of the Texas Rules of Evidence (permitting a lay witness to offer opinion testimony that is rationally based on perception of witness and helpful to clear understanding of witness' testimony or determination of fact in issue). TEX. R. EVID. 701. Accordingly, Seat has failed to carry his burden to show that counsel's performance was deficient for failing to object to this testimony.

Next, Seat complains of counsel's failure to object to Whitaker's testimony that Seat was hiding from Whitaker and that Seat attempted to hide the missing vehicle.[10] Seat complains that

---

[10]Whitaker testified that when he was unable to locate Seat, he returned to the group of people who told him Seat had taken off running. They were standing around a vehicle, looking in the engine compartment. He noticed they were all looking down, so he looked through the engine compartment and spotted Seat under the truck. Seat complains of the following testimony:

> Q: Did Mr. Seat have any tools in his hand?
> A: No.
> Q: He wasn't working on the vehicle?
> A: No.
> Q: Hiding from you?
> A: Yes.

Later, Whitaker was asked about the keys to the missing truck:

> Q: These keys were found in the pocket of the Defendant?
> A: The right pocket of Mr. Seat.
> Q: Who was hiding from you right before you found him?
> A: Yes.

Seat further complains of Whitaker's testimony regarding his alleged attempt to hide the truck:

> Q: And this is the area of town -- I guess, this is the dead end?
> A: Yes, sir, it is. It's kind of got a little cul-de-sac that he pulled off to the right side to kind of get it out of view from just looking down the street.

counsel allowed the witness to interpret his actions, which emphasizes his guilt by "hiding" and attempting to hide the truck. Generally, opinion testimony is not admissible to interpret the meanings of acts, conduct, or language of another. *Rodriguez v. State*, 903 S.W.2d 405, 408 (Tex. App.—Texarkana 1995, pet. ref'd). However, a lay witness may offer an opinion based on his or her perception to help a fact-finder understand testimony or determine a fact in issue. *See* TEX. R. EVID. 701; *Solomon v. State*, 49 S.W.3d 356, 364 (Tex. Crim. App. 2001). Seat offers no argument as to whether this evidence would have been properly admitted under Rule 701. Accordingly, he has not met his burden to show that counsel's performance was deficient under the first prong of *Strickland*.

Further complaint is made regarding counsel's failure to object to bolstering, leading, and/or argumentative testimony.[11] Seat complains the first and last of Whitaker's statements are

---

[11]Here, Seat complains of the following direct examination of Whitaker:

> Q: So there is a walking track -- two walking tracks in the area which is what confirmed what Ms. Bishop told you?
> A: That's correct.
> Q: You have witnesses that describe the pickup that was stolen that he was driving?
> A: Yes, sir.
> Q: He's got keys to the pickup?
> A: Yes, sir.
> Q: He runs from you?
> A: Yes, sir.
> Q: He hides from you?
> A: He did.
> Q: All right. What are we seeing here on 12 that's significant?
> A: He was seen removing something from the rear bumper, and it had some kind of sticker on it.
> Q: All right. And that matches up the description of what Mr. Gray told you?
> A: That was the original description. That's correct.

11

bolstering the previous testimony of other, unimpeached witnesses. "Bolstering" occurs when additional evidence is used to add truthfulness or greater weight to earlier, unimpeached evidence offered by the same party. *Pryne v. State*, 881 S.W.2d 593 (Tex. App.—Beaumont 1994, pet. ref'd). However, not all corroborative evidence is improper bolstering. For example, a relevant fact may be proven by multiple witnesses who have personal knowledge of the fact, subject to the court's discretion to exclude cumulative evidence, and as long as the testimony does not specifically relate to another witness' credibility. *See Baskin v. State*, 672 S.W.2d 312 (Tex. App.—San Antonio 1984, no pet.).

Here, Whitaker testified there were two walking tracks in the area. This statement was based on Whitaker's personal knowledge, as he previously testified in detail about the two different walking tracks and their respective locations. The problem Seat complains of is that part of the testimony indicating the existence of two walking tracks "confirmed what Ms. Bishop" told Whitaker. Earlier, Bishop testified that Seat wanted her to take him to drop the truck off at "the walking track." She further testified that there were "a few" walking tracks in the area. Whitaker's testimony regarding the fact that there were two walking tracks, in light of his detailed descriptions of their respective locations, appears to have been merely clarifying, rather than bolstering, Bishop's testimony. In any event, this testimony could have been fairly viewed in that light by trial counsel. It was not deficient performance to choose not to object to this question.

Seat claims Whitaker's statement that something was removed from the rear bumper of the

12

truck (apparently a sticker) and this "matches up the description" of what Gray told him, is bolstering to which counsel should have objected.[12] Bolstering is more precisely defined as the introduction of irrelevant evidence, which does not "make the existence of [a] fact that is of consequence to the determination of the action more or less probable," for the sole purpose of adding credence to some earlier unimpeached evidence offered by the same party. *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993). *Cohn* makes clear that Rule 401 of the Texas Rules of Evidence[13] is the source of the prohibition on bolstering. Consequently, evidence introduced solely for the purpose of bolstering does not meet Rule 401's definition of "relevant evidence." *Id.* at 819.

Testimony that Seat removed a bumper sticker on the missing truck is relevant because it has a tendency to make more probable the notion that Seat did not want the truck to be recognized because he may have taken it. Whitaker's testimony that Exhibit 12[14] indicates Seat removed a sticker from the rear bumper was not introduced solely for the purpose of bolstering Gray's testimony. This exhibit depicts the condition of the truck when it was located by Whitaker, indicating it was the same truck from which the sticker had been removed. Because this

---

[12]Gray testified that he saw Seat "[acting] like he was scratching a bumper sticker or something off the back of [the truck]."

[13]Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

[14]Exhibit 12 is a photograph of the truck's bumper showing scrape marks in an area where a bumper sticker would commonly be placed.

testimony "corroborates another witness' story or enhances inferences to be drawn from another source of evidence," it is "relevant evidence in the sense that it has an incrementally further tendency to establish a fact of consequence, and should not be considered bolstering." *Cohn*, 849 S.W.2d at 820. We find no deficient performance in the failure to object.

Seat claims the remaining testimony (referenced in footnote ten) was leading and counsel should have objected. Counsel made numerous objections to the State's leading questions throughout Whitaker's direct examination. At some point, it becomes a judgment call on whether to continue to object and thereby risk the appearance, in front of the jury, of being obstructionist. We will not second-guess counsel's judgment on this issue.

## C.    Failure to Object—Punishment Evidence

Next, Seat complains that counsel did not object to irrelevant questions during the punishment phase of the trial.[15] What is relevant and admissible during the punishment phase is simply that which will assist the fact-finder in deciding the appropriate sentence in a particular case. *Sims v. State*, 273 S.W.3d 291 (Tex. Crim. App. 2008). We agree that the complained-of

---

[15]Seat complains of the cross-examination of Sylvia Jamerson, Seat's mother:

Q:  Who is Ricky's dad?
A:  Dewayne Seat.   He's dead.
Q:  And prior to dying he had spent [the] majority of his adult life in prison, right?
A:  No.
Q:  He ever been in any trouble?
A:  He was in trouble.
Q:  Go to prison?
A:  No.

evidence was not relevant and therefore subject to objection. In light of Seat's prior criminal history, however, we cannot conclude that this isolated testimony that his father had been "in trouble" was sufficient to undermine confidence in the result—that the outcome at the punishment stage would have been different but for counsel's failure to object to this line of questioning.

### D.      Failure to Object—Misstatement of Law

Further complaint is made of counsel's failure to object to the prosecutor's misstatement of the law. In his opening statement, the prosecutor made the following statement:

> Mr. Hearrell talked to you a little bit about what unauthorized use of a motor vehicle is on grand jury [sic]. A little bit confusing but what that essentially is, is car theft. But for it to be car theft, you have to catch the person stealing the car. Okay. The legislature made a statute that if you're driving a car essentially that's stolen without that owner's permission that that's a State Jail Felony offense.

Section 31.07 of the Texas Penal Code states that a person commits the offense of unauthorized use of a vehicle if he or she "intentionally or knowingly operates another's . . . vehicle without the effective consent of the owner." TEX. PENAL CODE ANN. § 31.07. Section 31.03 states that a person commits the offense of theft if he or she "unlawfully appropriates property with intent to deprive the owner of property." Property is unlawfully appropriated if "it is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(a), (b)(1) (Vernon 2011). While both offenses contain the element of lack of the owner's effective consent, theft further requires the intent to deprive the owner of the owner's property. The "intent to deprive the owner of property" is a necessary element for a car theft charge. *Flores v. State*, 888 S.W.2d 187, 190 (Tex.

15

App.—Houston [1st Dist.] 1994, pet. ref'd).

Because the charge of unauthorized use of a motor vehicle does not include the element of the "intent to deprive the owner of property," it was a misstatement of the law to suggest that the offense of unauthorized use of a motor vehicle is "essentially" car theft. Further, the offense of theft (or as suggested here, "car theft") does not require that the person must be "caught stealing the car," as the State suggested to the jury.[16] This appears to be an attempt to explain the differences in the requirements of the two offenses, rather than an argument that Seat was guilty of car theft (which would place a more onerous burden on the State in proving its case). Regardless of the prosecutor's intent, the statement could be understood to imply that Seat committed car theft, a more serious crime than the unauthorized use of a motor vehicle. The Texas Court of Criminal Appeals has held that defense counsel has a duty to correct misstatements of the law that are detrimental to his or her client. *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005).

Even if the failure to object to the prosecutor's statement was deficient performance, Seat has not established that there is a reasonable probability that the outcome of the guilt/innocence phase of the trial would have been different if not for this deficient performance. *See Strickland*, 466 U.S. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.[17] *Id.* at 700.

---

[16]The "intent to deprive" element of automobile theft must be determined from the words and acts of the accused and it must exist at the time of the taking. *Flores*, 888 S.W.2d at 191.

[17]In his opening statement, defense counsel mitigated the effect of the prosecutor's misstatement of the law by stating,

### E.  Failure to Object—Jury Argument

Seat next argues that he received ineffective assistance because his attorney did not object to the State's improper jury argument on punishment.[18]  Proper jury argument must encompass one of the following areas:  (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from the evidence; (3) answer to the opposing counsel's argument; (4) a plea for law enforcement.  *Rocha v. State*, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 619 (Tex. Crim. App. 1997).  Defense counsel is allowed "wide latitude in drawing inferences from the evidence so long as the inferences are reasonable and offered in good faith."  *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997); *Bryant v. State*, 282 S.W.3d 156, 172 (Tex. App.—Texarkana 2009, pet. ref'd).  There was evidence that Seat parked the truck in a wooded area off of a walking track where it could not easily be seen.  We cannot conclude that the prosecutor's inference that Seat later intended to sell the truck for parts was an unreasonable deduction from the evidence.

---

> The issue will not be whether someone in this courtroom stole a vehicle.  The issue will be whether there is evidence that Mr. Seat operated the vehicle, and I'm asking you to hold the State to its burden, that they must prove this case beyond a reasonable doubt.

During closing argument of the guilt/innocence phase, defense counsel clarified,

> It's not a question of theft.  He is not being charged with theft.  The question is operation.

Moreover, the law regarding the unauthorized use of a motor vehicle was correctly stated in the charge to the jury.

[18]The alleged improper argument was:

17

We find no deficient performance on this claim.

---

What would have been the motive of Ricky Seat to take it to a dead end other than to come back at a later time and then take it to a chop shop and break it down or sell it or whatever.

## III. Sufficiency of the Evidence

In his next two points of error, Seat contends the evidence was insufficient to support the verdict.[19]  In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the unauthorized use of a motor vehicle.  *See Brooks*, 323 S.W.3d at 912 (citing *Jackson*, 443 U.S. at 319); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented.  *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge.  *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

---

[19]Seat argues the evidence is both legally and factually insufficient to support his conviction.  In *Brooks v. State*, 323 S.W.3d 893, 894–95, 912–13 (Tex. Crim. App. 2010) (a 4-1-4 decision with one judge joining the lead opinion with a concurring opinion and another concurring with the lead opinion and joining that concurrence), a plurality of the Texas Court of Criminal Appeals abolished the factual sufficiency review established by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny. The plurality and the concurring judges agreed that the *Jackson v. Virginia*, 443 U.S. 307 (1979), legal sufficiency standard is the sole standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.  *Brooks*, 323 S.W.3d at 894–95, 912–13.  Since the Texas Court of Criminal Appeals has abolished factual sufficiency review, we need not address the defendant's challenge to the factual sufficiency of the evidence.

1997). Under a hypothetically correct jury charge, Seat committed the offense of the unauthorized use of a motor vehicle if (1) Seat (2) intentionally or knowingly (3) operated the motor vehicle (4) without the effective consent of the owner. TEX. PENAL CODE ANN. § 31.07.

The State offered the testimony of Gene Gray and Amy Bishop to prove Seat operated the truck in question. Seat claims this testimony is insufficient to prove the truck Gray and Bishop saw him driving was the *same truck* taken from the car lot.

Gray testified that he repossesses cars for a living and has worked for Pat Swaim's Auto Sales. In speaking with Adams, Gray learned that a red Chevrolet S-10 pickup was missing from the lot. Gray testified that he saw Seat driving this truck on the morning it was discovered missing. Seat pulled the truck in front of a house on Fourteenth Northwest Street, not far from Gray's house. Gray testified that Seat got out of the truck and acted like he was scratching a sticker from the back bumper. Because Gray knows Seat, he easily recognized him. Gray identified the truck Seat was driving in the photographs offered as exhibits at trial of the truck missing from the car lot.

Bishop resides on Fourteenth Northwest Street. On April 16, 2010, Seat (whom Bishop has known for six years) arrived at Bishop's house driving a red Chevrolet S-10 pickup, which Bishop identified in a photograph offered as an exhibit at trial. Bishop testified that the driver's side of the truck Seat operated was scratched; the scratch on State's Exhibit eleven matched the scratch on the truck Seat was driving. Seat asked Bishop to take him to drop the truck off at the

20

walking track, but Bishop declined. Seat then drove away in the red pickup.

Bishop further testified that Seat owned a red Chevrolet S-10 pickup a "couple of months" prior to this incident, but could not say if Seat owned such a truck on April 16. Bishop could not distinguish the truck Seat owned from the truck shown in the photographs at trial, and she could not say whether Seat was operating the truck he owned or some other truck on April 16.

Seat claims that at most, the State proved Seat was driving a red pickup, but the evidence is insufficient to find that Seat was operating the Chevrolet S-10 taken from the car lot.[20] This assertion ignores other testimony identifying the missing truck as the same truck operated by Seat on April 16. Gray testified that Seat scratched a bumper sticker from the rear bumper of the truck; the truck recovered from the wooded area near the walking track had scratch marks on the rear bumper, where it appeared a bumper sticker was removed. Bishop testified the truck Seat operated had a scratch mark on the driver's side; the truck recovered from the wooded area had a scratch mark on the driver's side. In addition, the truck recovered by Whitaker had the same license plate and VIN number as the truck purchased by Pat Swaim Auto Sales. Whitaker testified that Seat had a Chevrolet key on a set of house keys in his pocket; this key operated the door lock and ignition of the truck recovered from the wooded area near the walking track.

The "jury is the exclusive judge of the credibility of witnesses and of the weight to be

---

[20]Adams testified that the truck missing from the car lot, a 2000 or 2001 model Chevrolet S-10, would have been almost identical to Chevrolet S-10s manufactured from 1995 to 2005, as they are very close in design with only small differences. Adams further testified that Chevrolet S-10s are very similar to GMC models and it is difficult to tell them apart.

21

given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). The jury may reasonably infer facts from the evidence presented, and is free to believe or disbelieve all or part of a witness' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).

Here, when viewing the evidence in the light most favorable to the verdict, there is sufficient evidence from which a rational jury could find that the State proved beyond a reasonable doubt the elements of unauthorized use of a motor vehicle. We overrule Seat's third and fourth points of error.

## IV. Venue

In points of error five and six, Seat claims the evidence is insufficient to prove the offense occurred in Lamar County, Texas. An indictment is required to allege the location of the offense to establish proper venue. *See* TEX. CODE CRIM. PROC. ANN. art. 21.02(5) (Vernon 2009). The indictment alleges that the offense occurred in Lamar County. It is presumed venue is proven in the trial court unless the record affirmatively shows otherwise or venue is made an issue at trial. TEX. R. APP. P. 44.2(c)(1). A plea of "not guilty" does not automatically put venue at issue. *See*

22

*Holdridge v. State*, 707 S.W.2d 18, 20–21 (Tex. Crim. App. 1986).[21] Because venue is not a "criminative fact," and therefore not an element of the offense, it need only be proven by a preponderance of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 13.17 (Vernon 2005); *Urbanski v. State*, 993 S.W.2d 789, 796 (Tex. App.—Dallas 1999, no pet.).

Here, Seat did not challenge venue in the trial court. Therefore, the issue is presumed proven at trial unless the record affirmatively shows otherwise. TEX. R. APP. P. 44.2(c)(1). The record reflects that the red pickup Seat drove to Fourteenth Northwest Street was in Lamar County, Texas. Because this evidence fails to affirmatively establish that venue does *not* exist in Lamar County for the offense of the unauthorized use of a motor vehicle, we overrule this point of error.

## V.     The Right to Counsel

In his final point of error, Seat claims he was denied right to counsel in violation of the Sixth Amendment. In support of this contention, Seat claims he was not appointed appellate counsel until the thirty-day period for filing a motion for new trial expired.[22] Seat was sentenced on September 13, 2010, and the notice of appeal, filed on the same date, was signed by trial counsel. No motion for new trial was filed. Seat takes the position he was no longer represented

---

[21]"The rule that a plea of not guilty is enough to require the State to prove its allegation of venue is to place the burden of proof at trial. Article 44.24(a) is a rule of appellate presumption that the State met its burden of proof unless during trial accused challenged sufficiency of evidence presented by the State to show venue." *Holdridge*, 707 S.W.2d at 21.

[22]Seat was convicted on September 13, 2010. Appellate counsel was appointed on October 20, 2010.

23

by trial counsel during the time period for filing a motion for new trial.[23] He further claims that had appellate counsel been appointed in a timely manner, counsel would have had the opportunity to file a motion for new trial to further develop Seat's claims of ineffective assistance. Seat asks that his conviction be reversed or, alternatively, that this appeal be abated to allow him to file a motion for new trial.

A motion for new trial must be filed no later than thirty days after the trial court "imposes or suspends sentence in open court." TEX. R. APP. P. 21.4(a); *see* TEX. R. CIV. P. 329b. Although a motion for new trial is not required in order to present a point of error on appeal, a hearing on the motion serves to develop evidence that is not otherwise in the record. *See Oldham v. State*, 977 S.W.2d 354, 361 (Tex. Crim. App. 1998).[24]

The thirty-day period in which to file a motion for new trial is a critical stage of the proceedings, and a defendant has a constitutional right to counsel during that period. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007); *Prudhomme v. State*, 28 S.W.3d 114, 119 (Tex. App.—Texarkana 2000, order), *disp. on merits*, 47 S.W.3d 683 (Tex. App.—Texarkana 2001, pet. ref'd). When a defendant is represented by counsel during trial, there is a rebuttable

---

[23]Seat claims he filed a pro se notice of appeal and pauper's oath of defendant on appeal. The notice of appeal is signed by trial counsel. The pauper's oath of defendant on appeal, a separate document filed on the same day as the notice of appeal, is signed only by Seat.

[24]Seat indicates that a motion for new trial should have been filed in order to develop his claims of ineffective assistance of counsel. The Texas Court of Criminal Appeals has held that "when direct appeal has not provided an adequate record to evaluate a claim which might be substantiated through additional evidence gathered in a habeas corpus proceeding, we will not apply the general doctrine that forbids raising a claim on habeas corpus after it was rejected on appeal. *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997)." *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

24

presumption that counsel continued to represent the defendant during the thirty-day time period for filing a motion for new trial. *Cooks*, 240 S.W.3d at 911; *Smith v. State*, 17 S.W.3d 660, 662 (Tex. Crim. App. 2000). The presumption of adequate representation arises, at least in part, because appointed counsel remains as defendant's counsel for all purposes until expressly permitted to withdraw, even if the appointment is for trial only. *Nguyen v. State*, 222 S.W.3d 537, 540 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). This presumption is not rebutted when there is nothing in the record to suggest otherwise. *Smith*, 17 S.W.3d at 662–63 (when no motion for new trial is filed, the rebuttable presumption is that the motion was considered and rejected by a defendant and his or her counsel). If this presumption is rebutted with evidence that the defendant was deprived of adequate counsel during this stage, such deprivation is subject to a harm analysis. *Id.*

Here, the record does not indicate trial counsel withdrew from representation during the time to present a motion for new trial. We, therefore, presume trial counsel informed Seat of his appellate rights. *Oldham*, 977 S.W.2d at 362–63. Nothing in the record suggests that Seat's trial counsel *failed* to discuss filing a motion for new trial with Seat and that Seat considered and rejected the idea. *See Smith*, 17 S.W.3d at 662.

Here, Seat has failed to rebut the presumption of adequate representation. *See id.* at 662–63. We overrule Seat's final point of error.

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:    May 17, 2011
Date Decided:      June 8, 2011

Do Not Publish